JONES vs. SUPERVISORS OF GRANT COUNTY.

Under the law of 1859 (chapter 22), the duplicate lists directed by sections 111 and 112 of chap. 18 of Rev. Stat., 1858, are no longer required, and the duplicate receipts prescribed by sec. 114 of the same chapter are unnecessary.

A county treasurer is not entitled to charge for the manual labor of making a receipt, where by law he receives a fixed compensation for receiving and paying out the money for which it is given. The statute having fixed the compensation for receiving the money, it necessarily includes compensation for every act requisite to a proper performance of that duty.

A county treasurer cannot therefore charge the county for the labor of making out receipts for moneys received by him for taxes after a return to him by the town treasurers and before sale, nor for *calculating* the 5 per cent. fees and 12 per cent. interest. For calculating and collecting the fees and interest he is paid by his per centage.

APPEAL from the Circuit Court for *Grant* County.

On the 17th of December, 1860, *Jones*, treasurer of Grant county, presented to the board of supervisors of said county the following account, duly verified: " Grant county, Wisconsin, to James A. Jones, Treasurer, Dr. To issuing, between Feb. 1st and Sept. 6th, 1859, 594 tax receipts, containing in all 1875 descriptions of land upon the tax list returned to the office of said treasurer as delinquent taxes for the year 1858, $153 15. To duplicating and recording said receipts, $153 15. To calculating and collecting 5 per cent. fees to the amount of $341 19 in said receipts, $15 00.

To calculating and collecting interest at 12 per cent., to the amount of $249 89 in same, $15 00. To furnishing blank receipts for same, $6 00. To issuing between Jan. 16th and Oct 4th, 1860, 601 tax receipts, containing in all 1851 descriptions of land upon the tax list returned to the office of said treasurer as delinquent taxes for the year 1859, $152 65. To duplicating and recording said receipts, $152 65. To calculating and collecting 5 per cent. fees to the amount of $330 95 in said receipts, $15 00. To calculating and collecting interest at 12 per cent., to the amount of $256 96 in same, $15 00. To furnishing blank receipts for same, $6 00. * * November 15th, 1860. To one per cent. on $5,355 50 returned to the clerk of the board in certificates of sales to Grant county for taxes of 1859, which amount was refused to be allowed by the board in annual settlement, $53 55. [Total], $737 15."

The account was disallowed by the board, and an appeal taken to the circuit court of the county, where the defendant filed an offer in writing to allow judgment to be entered in favor of the plaintiff for $65 55, the amount of the fifth, tenth and eleventh items in the account, but the offer was refused.

On the trial it was admitted that the plaintiff, as treasurer of said county, performed the services set forth in his account, and furnished the blank receipts therein mentioned; that he had been allowed in his annual settlements with the board of supervisors, one per cent. on the aggregate amount of the delinquent taxes returned to him by the several town treasurers as so much cash received by him, and upon such portion of the same as was converted into cash by the same being paid to said county treasurer by individual tax payers, he was allowed one per cent. for disbursing so much thereof as he disbursed in each year; but it was admitted also that said treasurer was required to receive and receipt to such individuals as desired to pay taxes on any delinquent lands prior to the sale thereof for non-payment, and that for receiving the money so paid by individuals and giving receipts and duplicate receipts therefor, as charged in his account, he had not received from the county one per

June Term,
1861.

JONES
v.
SUPERVISORS
GRANT CO.

cent. on the amount so received as taxes, nor any other specific allowance, but did receive one per cent. for collecting the aggregate amount of the 5 per cent. accruing interest and advertising fees. The amount returned each year to the treasurer of the county as delinquent taxes, and the amounts received by him from individual tax payers prior to the sales for taxes, were also admitted by the parties.

The circuit court found as facts, that the plaintiff had performed the services specified in his account, and that the value thereof was the sums charged therein; and as a conclusion of law, that the plaintiff, having, as county treasurer, performed services for which the law fixes no compensation, is entitled to receive a reasonable compensation therefor, being the sum of $737 15; and judgment was rendered accordingly.

*J. T. Mills*, for appellant.

*Wm. E. Carter*, for respondent.

December 11  *By the Court*, DIXON, C. J.  Chapter 22 of the Laws of 1859, constitutes a complete system for the collection of taxes upon all lands which are returned delinquent by the treasurers of the several towns to the county treasurer as provided by law. It differs very materially from that prescribed by chapter 18 of the Revised Statutes of 1858, and is an abandonment or repeal of it, and a return to that established by chapter 15 of the Revised Statutes of 1849. The duplicate lists directed by sections 111 and 112 of chapter 18, are no longer required, and the duplicate receipts prescribed by section 114 are wholly unnecessary. Both of these proceedings are entirely inconsistent with the system provided by chapter 22, and neither can have any possible use or application under it. This alone would seem to be an answer to the greater part of the argument for the respondent, and to dispose of those items of his account which are for issuing tax receipts and duplicating and recording the same. It is clearly a good answer to the charges for duplicating and recording the receipts, for no such services were required of him by law. As to these items then, the question comes to this : Is the county treasurer entitled to charge for the man-

June Term,
1861.

JONES
v.
SUPERVISORS
GRANT CO.

ual labor of making a receipt, when by law he receives a fixed compensation for receiving and paying out the money for which it is given? It is assumed by counsel for the respondent, that the provisions of section 134 of chapter 13 of the Revised Statutes, are inapplicable to cases where the treasurer receives moneys due for taxes after a return to him by the town treasurer and before sale—that the compensation there provided applies only to state and county taxes, and not to cases where he must enter into minute calculations upon small sums and give receipts therefor. We see no foundation for this distinction. Section 134 is general in its application, and declares expressly that the county treasurer shall receive for his services two per cent. on *all* moneys received and paid out by him as treasurer—that is, one per cent. for receiving, and one per cent. for paying out the same— except where the money arises from the sale of lands or other property belonging to the county, upon which he shall receive only one half that amount for receiving and paying it out. Whether the fees here fixed are an adequate compensation to the treasurer for his services in receiving these small sums, when taken by themselves, is not a consideration upon which we would be authorized to exclude them from the operation of a statute by which they are so plainly included. Neither is it any reason why we should attempt to increase the compensation of the treasurer, provided we thought it by law too small. That is a matter for the legislature, and when it has once been fixed and he has rendered the services, it becomes in the nature of a contract between him and the people, which he can no more be permitted to disregard than any other person who has entered into a binding agreement. It may be supposed that in fixing this rate of compensation on all moneys received and paid out by him, the legislature considered that he would be remunerated for his labor and services in receiving and paying out small sums by the compensation received upon larger ones, which, for the actual trouble and labor occasioned by them, is certainly very liberal. Whether this was the view taken by the legislature or not, it is very clear that the compensation prescribed in this section applies to the moneys specified in

June Term,
1861.

JONES
v.
SUPERVISORS
GRANT CO.

these receipts, and the inquiry is, whether the respondent can make an additional charge for his services in executing them. We think he cannot. It seems to us that the giving of the receipts was but an incident to the act of receiving payment, and necessarily pertained to it, and that it cannot be made the subject of a separate charge. It is customary for all public or fiscal agents, whether there be any specific provisions of law or not, to give and take receipts upon the receipt and payment of money. Both public and private interests demand that they should do so, and in such cases the act of giving the receipt is regarded as a part of the act of receiving the money—a step taken in accomplishing it. The statute having fixed the respondent's compensation for receiving the money, it necessarily includes compensation for every act requisite to a proper performance of that duty, and excludes the idea that he can make a separate demand for the receipt. We know of no instance where a public officer, who is paid a certain sum for receiving and disbursing public funds, has ever been allowed a claim of this kind. Under the statute of 1849, this method of discharging taxes was constantly practiced, yet a charge by the treasurer for executing the receipt was never thought of. And even under chapter 18 of the present revision, the fees for duplicate receipts, specified in section 181, were evidently not intended as compensation to the treasurer for making the receipts, but for making the lists required by sections 111 and 112. Before the lists were made the treasurer was to receive nothing; but after they were made, it being a work of considerable labor, the fees were to be charged.

It seems to be supposed by counsel that section 110 of chapter 18 must be regarded as still in force, else the treasurer has no authority to receive money and discharge taxes after return and before sale. We do not think this is necessarily so. It follows from the nature of his duties and the object of the return, which is to enable him to proceed to enforce their payment, that he may receive the money whenever it is offered, together with the costs and charges to that time, and discharge the taxes, although there be no special provision of law to that effect. When this is done the object

of the statute is accomplished, and further proceedings become unnecessary.

What we have said in relation to the charges for making out and issuing the receipts applies equally to those for calculating and collecting the five per cent. fees and twelve per cent. interest. He was paid for his services by the per centage allowed by section 134, which was in full.

Something is said in argument about the five per cent. collector's fees mentioned in section 97 of chapter 118. It is admitted on both sides that these fees belong to the county, but what bearing that has upon the present controversy is not perceived.

The items for furnishing blanks, and the one per cent. on the aggregate amount of certificates of sales to the county, included in the written offer of the appellants, are not contested. The supervisors seem willing to allow them, and hence their legality need not be examined.

It follows from these views that the judgment of the circuit court must be reversed, and the cause remanded, with directions that judgment be rendered for the respondent for the sum specified in the appellant's written offer, without costs; and that the appellants have judgment against the respondent for the costs which have accrued to them since the making of said offer. Chap. 97, Laws of 1858; R. S., p. 837.