Kollook, Appellant, vs. Dodge and others, Respondents.

*September 29, 1899 — January 9, 1900.*

*Municipal corporations: City surveyor: Official duties: Compensation: Common council: Charter provisions.*

The charter of Madison (ch. 36, Laws of 1882, as amended by ch. 195, Laws of 1885) provides for the election by the council of a city surveyor, who shall be a practical surveyor and engineer, and that the council shall prescribe his duties and fix the fee and compensation for any service performed by him. It also empowers the council to impose additional duties upon officers whose duties are therein prescribed, and to fix the compensation of all officers elected by it, which shall not be increased or diminished during the time such officer shall remain in office. The charter nowhere prescribes the duties of the surveyor, except that he shall act on the board of sewer assessors. The council, although it had prescribed from time to time the duties of the surveyor as to street improvements, never took such action in regard to building sewers, except to recognize that such services were not official duties. The council, having adopted a general system of sewage disposal, employed D.,— who had theretofore been elected city surveyor and his salary as such fixed before the beginning of his term of office, to prepare plans and specifications therefor and agreed to pay him for such plans and specifications, etc., compensation in addition to his salary as city surveyor. In an action by a taxpayer to restrain the payment of such additional compensation and to recover back what had already been paid, it is *held* that the legislature had delegated to the council the power to prescribe the duties of the city surveyor and to fix the fee and compensation for any services performed by

Kollock vs. Dodge and others.

him; that the council had determined that the services in question were not official services; and that under the peculiar charter provisions this was not such an unwarranted exercise of power as to call for the intervention of the courts. MARSHALL, J., and CASSODAY, C. J., dissent.

APPEAL from an order of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge. *Affirmed.*

The plaintiff brings this action, on behalf of himself and other taxpayers of the city of *Madison,* to restrain the defendant *Dodge* from collecting, and the city from paying to him, certain sums of money which it is claimed *Dodge* insists are due for services in superintending the construction of a system of sewerage in said city, and to recover certain sums already paid to him without any authority of law, the ground upon which the action is based being that such services were performed by the defendant while he held the office of city surveyor and engineer. A proper preliminary restraining order was granted. The defendants answered, and, upon the pleadings and certain affidavits, moved the court to dissolve the injunction. After a hearing in that regard, the court dissolved the injunction, and from the order so entered the plaintiff appeals.

For the appellant there were briefs by *Bird, Rogers & Bird,* and oral argument by *Burr W. Jones.* They contended, *inter alia,* that special provisions of a statute in regard to a particular subject will not prevail over general provisions in the same or some other statute, except in so far, and so far only, as there is necessary conflict between them. If their provisions can be harmonized, they will both stand together and the special statute be held simply as cumulative to the general. *State ex rel. Lutfring v. Gœtze,* 22 Wis. 363; *Hancock v. Merriman,* 46 Wis. 159; *Mead v. Bagnall,* 15 Wis. 156; *Schieve v. State,* 17 Wis. 253; *Bernier v. Bernier,* 147 U. S. 242; *Chicago, M. & St. P. R. Co. v. U. S.* 127 U. S. 406; *Hutchinson v. Self,* 153 Ill. 542; *Bea-*

Kollock vs. Dodge and others.

.trice *Paper Co. v. Beloit Iron Works*, 46 Neb. 900; *State ex .rel. Churchill v. Hay*, 45 Neb. 321; *Jackson v. Washington Co.* 34 Neb. 680; *Lingonner v. Ambler*, 44 Neb. 316; *State ex rel. Berry v. Babcock*, 21 Neb. 599; *Hopkins v. Scott*, 38 Neb. 661; *Cincinnati v. Connor*, 55 Ohio St. 82. All pro- ·ceedings of the sewerage committee, as well as the common council, promising, agreeing, or proposing to pay the city surveyor any sum in addition to his legally fixed salary for engineering services performed for the city are unlawful .and void; and all payments already made and all proposed ·to be made are without authority of law, and the latter may be restrained and the amount of the former recovered. 1 Dillon, Mun. Corp. (4th ed.), §§ 230, 233, 234; *Jones v. Grant Co.* 14 Wis. 518; *Kewaunee Co. v. Knipfer*, 37 Wis. 496; *Rooney v. Milwaukee Co.* 40 Wis. 23; *Doolan v. Manitowoc*, 48 Wis. 312; *Willard v. Comstock*, 58 Wis. 565, 576; *State ex rel. Raymer v. Cunningham*, 82 Wis. 39, 47; *Frederick v. Douglas Co.* 96 Wis. 416; *Quaw v. Paff*, 98 Wis. 586; *Buck ·v. Eureka*, 30 L. R. A. 409; *Evans v. Trenton*, 24 N. J. Law, 764. The customary violation of the plain language of the law gives no authority for continuing such violation, or, as ·otherwise expressed, customary disregard of plain language does not furnish a rule to guide judicial construction. *State .ex rel. Weiss v. District Board of Edgerton*, 76 Wis. 177, 195; *State ex rel. Raymer v. Cunningham*, 82 Wis. 39–50; *Traveler's Ins. Co. v. Fricke*, 94 Wis. 258; *Fulton v. Stevens*, 99 Wis. 307.

For the respondents there was a brief by *Olin & Butler*, .attorneys for *Dodge*, and oral argument by *H. L. Butler* and *J. A. Aylward*. They contended, *inter alia*, that the ·services in question were not within the official duties of the city surveyor, and though it be assumed that sec. 7, subch. III, ·of the charter (ch. 36, Laws of 1882), applies thereto, the ·surveyor is entitled to compensation therefor over and above .his salary. Mechem, Public Officers, § 863; Tiedeman, Mun.

Corp. § 79; *Evans v. Trenton*, 24 N. J. Law, 764, 765, 768; *State ex rel. Seattle v. Carson*, 6 Wash. 250; *Klemm v. Newark*, 61 N. J. Law, 112; *U. S. v. Brindle*, 110 U. S. 688, 689, 693; *Leavenworth Co. v. Brewer*, 9 Kan. 308; *Niles v. Muzzy*, 33 Mich. 61; *White v. East Saginaw*, 43 Mich. 567; *Huffman v. Greenwood Co.* 23 Kan. 281; *U. S. v. Ripley*, 7 Pet. 18; *U. S. v. King*, 147 U. S. 676, 679; *Eagle River v. Oneida Co.* 86 Wis. 266; *Billings v. Oneida Co.* 98 Wis. 584; *Massing v. State*, 14 Wis. 502; *Fernekes v. Milwaukee Co.* 43 Wis. 303; *Reif v. Paige*, 55 Wis. 496. The council is not precluded from altering the compensation of the surveyor during his term of office, and hence may lawfully compensate him for the services in question, whether they be official or extra-official services. *Nichols v. Halliday*, 27 Wis. 406; *Landis v. Lincoln Co.* 31 Oreg. 424; *Cowdin v. Huff*, 10 Ind. 83; *Milwaukee Co. v. Hackett*, 21 Wis. 613; *State ex rel. Martin v. Kalb*, 50 Wis. 178; *Frederick v. Douglas Co.* 96 Wis. 411; *Koch v. Milwaukee*, 89 Wis. 220. The services having been performed, the plaintiff taxpayer, having permitted them to be performed on the faith of compensation therefor, will not be aided by a court of equity to recover back the money paid, or to restrain the payment of the money due. *Farmer v. St. Paul*, 33 L. R. A. 199; *Frederick v. Douglas Co.* 96 Wis. 411; *Quaw v. Paff*, 98 Wis. 586; *Helms v. McFadden*, 18 Wis. 191; *Tash v. Adams*, 10 Cush. 252; *Ellsworth v. Rossiter*, 46 Kan. 237; *Eagle River v. Oneida Co.* 86 Wis. 269; *State ex rel. Schintgen v. La Crosse*, 101 Wis. 208.

The following opinion was filed October 20, 1899:·

BARDEEN, J.    The facts involved in this litigation may be stated briefly as follows: The city charter (ch. 36, Laws of 1882) provides that on the third Tuesday of April of each year the common council may elect a city surveyor and other officers named, to hold office for one year. Sec. 15 of subch. III provides that he shall be a practical surveyor and

· engineer, and that " the common council shall prescribe the·
duties and fix the fee and compensation for any service per-
formed by him." None of his duties is prescribed by the·
charter, except as hereinafter mentioned. Sec. 7 empowers·
the council to fix the compensation of all officers elected by
it, by resolution, at the time the office is created or at the·
commencement of the year, which shall not be increased or·
diminished during the term such officer shall remain in of-
fice. At the commencement of the year for each of the
years from 1893 to 1899, inclusive, the council fixed the·
compensation of the city surveyor, and afterwards duly
elected the defendant *Dodge* to that office. During the period·
covered by the record the incumbents of that office were:·
A. D. Conover, from April, 1882, to 1884; Capt. John Nader,
from April, 1884, to 1887; and defendant *Dodge* from 1887
to the time this action was brought. Prior to 1883 no pub-
lic sewers had been constructed in the city. In·the spring·
of that year Mr. Conover was instructed to prepare plans·
and maps for a complete system of sewerage. Such plans·
were prepared during his term of office, and his bill for $300·
was paid in July, 1884, after his term of office had expired.
His plans were not adopted. In August, 1884, the project
of a district system of sewerage was set on foot. Ch. 195,
Laws of 1885, was passed, which superseded the former pro-
visions of the charter on the subject of sewerage. Plans·
were presented by Capt. Nader, which were submitted to·
Mr. Gray, a sanitary expert from the East, and, as modified,
were adopted by the council in April, 1885. Following the
adoption of these plans, various sewers were constructed
under the supervision of Capt. Nader during his incum-
bency of the office of city surveyor, and his services in that
regard were duly paid by the council, he receiving therefor·
over $1,500 above his salary. From 1887 until 1893, while·
*Mr. Dodge* was in office, sewers were constructed under his
supervision, and paid for by the council, over and above his·

salary. The district system, by which the sewage was turned into lakes, was unsatisfactory. In August, 1893, a resolution was adopted by the council inviting *Mr. Dodge*, Capt. Nader, and other engineers to submit plans for diverting the sewage from the lake, and for its chemical treatment, and which "authorized the sewerage committee to agree with said parties as to the price for the plans and specifications submitted, and also as to the price to be charged by the party whose plans and estimates are accepted for superintendence of construction of the sewers and erection of necessary buildings and appliances." The matter was duly advertised, and plans were submitted by *Mr. Dodge*, Capt. Nader, and others. None of the plans was adopted. In July, 1895, the council passed a resolution providing for the appointment of a committee to examine into and report a feasible plan of sewerage to take the place of the present system, and to obtain plans for the system recommended by them. In September of that year the committee arranged with *Mr. Dodge* and Capt. Nader to prepare a joint plan. Such plan was prepared by them, approved by the committee, and reported to and adopted by the council. Thereupon orders were made for the construction of intercepting sewers and for the disposal plant, and the work of constructing the sewers was done under the plans so adopted, and under the supervision of the men who prepared them. While this work was in progress the question of the purification of the sewage which was to be collected was discussed, and *Dodge* and Nader were requested to, and did, prepare detailed plans and specifications for a land-treatment system. On July 10, 1896, the council adopted a resolution empowering the general sewer committee to enter into an agreement with *Dodge* and Nader for the compensation to be paid them for the work done and to be done by them, or either of them, in planning and superintending the construction of the new interception

sewers and disposal works, or farm to be used in connection
therewith.   An agreement was finally made that the com-
pensation of both engineers should be five per centum upon
the total cost of construction.   Afterwards both *Dodge* and
Nader presented bills to the council for $1,000 each as part
payment for their services.   The bills were referred to the
proper committee, reported for payment, and the council
duly allowed the same.   In October, 1897, *Dodge* and Nader
submitted a proposition to the council, made by the Ameri-
can Sanitary Engineering Company, for the construction of
a disposal plant.   This proposition was finally accepted, and
a contract entered into.   The former plans were modified
to correspond to the changed conditions.   The work of com-
pleting the intercepting sewers and the disposal plant pro-
ceeded under the joint supervision of *Dodge* and Nader.   At
the time this action was commenced this work had been
completed at a cost of about $100,000.

It is undisputed that work of preparing the plans and of
superintendence required the expenditure of a large amount
of time on the part of both engineers; that the sewerage
problem was one of great difficulty; that it involved special
study and skill; that it was and is a special branch of en-
gineering, involving a high degree of skill and responsibil-
ity, and without the scope of ordinary engineering or sur-
veying services.   No question is raised as to the reasonable
value of the services rendered.   The record shows without
dispute that the services rendered have all been performed
by *Mr. Dodge*, relying upon the power and intention of the
council to compensate him therefor, and that the city has
received the benefit of such services, expecting to and will-
ing to pay therefor.   It further appears that he would not
have undertaken the work, except upon the understanding
that he was to receive pay therefor.   From the very begin-
ning of the work, the council have understood and recog-
nized the fact that this work was not within the official

duties of the surveyor, and not included within his salary. As an instance of this understanding, the council on May 15, 1898, indefinitely postponed a resolution that the salary of the city surveyor " shall be in full for all such engineering services that shall be rendered for the city, or any department thereof." On April 18, 1899, after this work had been fully completed, a similar resolution was adopted.

There can be no doubt of the rule that a person accepts an office with all its burdens, duties, and responsibilities; that he must be content to accept such burdens and perform the duties appertaining to his office for the compensation provided therefor. *Kewaunee Co. v. Knipfer,* 37 Wis. 496; *Frederick v. Douglas Co.* 96 Wis. 411; *Quaw v. Paff,* 98 Wis. 586. In all of the cases submitted for our consideration, the duties of the office have either been prescribed by law, or the duty of fixing them has been delegated to local authority, which has exercised that power by prescribing and laying out the duties of such officers. It is important to note in this connection that the charter nowhere prescribes the duties of the city surveyor, except that sec. 6, subch. X, of the charter as amended (sec. 14, ch. 195, Laws of 1885), provides that he shall act on the board of sewer assessors; and by sec. 12 the council may allow the assessors compensation for their services, not exceeding three dollars per day. Sec. 15, before referred to, says that the city surveyor shall be a practical surveyor and engineer, and that "*the common council shall prescribe the duties and fix the fee and compensation for any service performed by him.*" The duty of every other officer named in the charter, except the city attorney, is fixed by express provision. With relation to the city surveyor, no duty or obligation is imposed upon him, except in the instance named. It is left entirely with the council to prescribe his duties from time to time, and to fix his fee or compensation therefor.

It is argued that sec. 7 of subch. III of the charter re-

quires the council to fix the compensation of the surveyor, and not to change it while in office. The section is as follows: "Sec. 7. The common council shall have power from time to time to require other and further duties to be performed by any officer whose duties are herein prescribed; and to appoint such other officers as may be necessary to carry into effect the provision of this act, and to prescribe their duties, and to fix the compensation of all officers elected or appointed by it, such compensation to be fixed by resolution at the time the office is created, or at the commencement of the year, and shall not be increased or diminished during the time such officer shall remain in office." This is followed by sec. 15, before referred to. This latter section deals directly with the city surveyor. The council shall prescribe the duties, and fix the *fee and compensation* for any service performed by him. It is within common knowledge that the services required of the city surveyor would necessarily be of a fluctuating character, depending entirely upon exigencies or the circumstance of future city improvements determined upon. His services are not at all necessary or required in the ordinary administration of city affairs. In view of these facts, it would be practically impossible for the council to know beforehand what duties would be required of the surveyor, or what his compensation should be. Hence the legislature saw fit to authorize the council to say in how far his services would be required, and to then fix this fee or compensation "for any service performed by him." The fact that they are so empowered renders this section inconsistent with the prior one. As stated by Judge PAINE in *State ex rel. Lutfring v. Gœtze*, 22 Wis. 363, "There is no rule of construction more reasonable, and none better settled, than that special provisions of a statute in regard to a particular subject will prevail over general provisions in the same or other statutes, so far as there is a conflict." This is in conformity to subd. 14, sec.

4972, Stats. 1898, and subsequent decisions of this court. *Hancock v. Merriman*, 46 Wis. 159; *Hall v. Racine*, 81 Wis. 72; *State ex rel. Holt L. Co. v. Bellew*, 86 Wis. 189; *In re Gilbert*, 94 Wis. 108. Sec. 15 contains an express delegation of power to prescribe the duties of the surveyor. The courts have no right to intervene unless there has been an unwarranted or unreasonable exercise of that power. The council had the right to say what were and what were not official duties. From the very outset of the agitation for an extensive sewer system, the council has acted upon the assumption that services of the surveyor in that regard were not official services. Whether wisely or not, we need not inquire. Under the circumstances, that they had the power to so treat them seems quite certain. Until they had determined that they were in fact official duties, conceding that under the charter they had no right to increase his compensation for official services, they were at liberty to contract with him with reference thereto. The compensation mentioned in sec. 7 means compensation for the performance of such duties as the council had prescribed for him to do. The record shows that in conformity to this idea the council from time to time, as ordinances for street improvements were adopted, prescribed the duties of the surveyor. No such action was ever taken in regard to the building of sewers. On the contrary, the council has again and again determined that such services were not official duties. Its declarations to this effect began with the first step ever taken in the city toward the construction of sewers, and has consistently continued without interruption down to the present time. The council's action in the execution of the delegated power is as binding as though the legislature had declared the services not to be official. But it is said that these services came within the scope of his official designation. The only qualification prescribed by the charter is that the " city surveyor " shall be a " practical surveyor and engineer." He may possess these

qualifications, and yet fall far short of that technical knowl-
edge and skill necessary to originate and carry through so
vast and important an undertaking as the one in question.
The record shows that this is a distinct branch of engineer-
ing service, involving the exercise of knowledge and skill
not usually possessed by the ordinary surveyor or engineer.
But, whether this be so or not, such services not having been
declared official, but, on the contrary, having been treated
by the council as extra-official, neither the city nor any tax-
payer thereof can successfully ask the court to intervene and
exercise the power delegated to the council.

There are other considerations entering into the decision
of this question. Under the general scheme provided in
the charter for a system of sewerage, after the proper pre-
liminary steps have been taken and the council has de-
termined to proceed, it is provided that the council shall
direct the city surveyor, *or other competent engineers*, to
make or cause to be made suitable plans, surveys, and speci-
fications of the work. Now, a common test of whether a
service is official or not official is whether it may lawfully
be performed by another. If these services were official,—
imposed by law upon the city surveyor,—it would be doubt-
ful if the city would have any right to employ and pay some
other person to perform them (see *Frederick v. Douglas Co.*
96 Wis. 411), but the right is distinctly given to secure the
services of some other competent engineer. Here is a legis-
lative declaration that the services need not necessarily be
performed by the surveyor, but may be committed to and
performed by another. Another section of the act lays the
express duty upon the city surveyor to act on the board of
assessors, and still another provides for his compensation
for such services. Thus, by two distinct sections a duty
is imposed, and provision made for compensation thereof.
This seems entirely inconsistent with the contention that
under the section of the charter the surveyor's compensation

must be fixed at the beginning of his term, and cannot be changed.

Another circumstance is of significance in this connection: Under the charter amendment in 1885 the plan of sewer building was changed, and provision made by which the property benefited might be charged with the expense or some portion of it. With respect to some, if not all, of the items the plaintiff seeks to recover back, the record shows that the same were included in the estimate of the cost of such work, assessed against the property benefited, and paid into the city treasury or to the contractor, so that neither the city nor the taxpayer suing can have any grievance in that respect.

It is well settled that, in absence of any prohibition or restriction, the term of office and the compensation of the officer may be changed by the proper authority, and such change will apply to officers then in office as well as to those thereafter selected. *State ex rel. Martin v. Kalb*, 50 Wis. 178. We concede the rule, in all its amplitude, that a person accepting a public office with a fixed salary is bound to perform the duties of the office for the salary, and that no very nice distinctions should be indulged as to what are and what are not official duties. But the rule nevertheless has its limit. It does not follow that a public officer is bound to perform all manner of public services without compensation, because his office has a salary attached to it. Nor is he, in consequence of holding an office, rendered legally incompetent to discharge duties which are extra-official, outside of his official duties as prescribed. Mechem, Public Officers, § 863; *State ex rel. Seattle v. Carson*, 6 Wash. 250; *U. S. v. Brindle*, 110 U. S. 688. See *Eagle River v. Oneida Co.* 86 Wis. 266.

We base this decision squarely upon the propositions that the legislature has delegated to the council the power to prescribe the duties of the city surveyor, and to fix the fee

and compensation for any services performed by him, that the council has determined that the services in question are not official services, and that under the peculiar charter provisions this was not such an unwarranted exercise of power as to call for the intervention of the courts. Hence it follows that the order of the court below dissolving the injunction was proper, and must be approved.

*By the Court.*— The order of the circuit court is affirmed.

The following dissenting opinions were filed October 31, 1899:

MARSHALL, J.   There is no governmental policy more generally adopted than that which absolutely prohibits, by legislative enactments, changes in the compensation of a public officer during his term of office, more frequently violated by the recklessness or ignorance of executive bodies concurring with the ignorance or greed of their beneficiaries, the abuse of which if tolerated will lead to greater mischiefs, and none that courts generally have more rigorously enforced and that this court has more consistently and firmly upheld. In *Quaw v. Paff*, 98 Wis. 586, summarizing many previous decisions, it was said: "Such wholesome provisions of law cannot be evaded so as to be beyond remedy by an allowance for the performance of some specific act really belonging to the duties of the office, . . . or by any other of the many ways that have been resorted to by officers to obtain possession of public money, ostensibly as compensation for some public service outside of their official duties. Officers take their offices *cum onere*, and can acquire no right, legal or equitable, to a salary in excess of that provided and fixed by law before they enter upon their official duties. Whether the salary incident to an office be adequate or inadequate is entirely immaterial. The officer accepting an office has no right to demand more for the performance of its duties, or

Kollock vs. Dodge and others.

the performance of any duty, as such officer, not required by law, but which may be required of him by the governing body of the corporation and voluntarily performed.   All services performed, which are within the scope of his official duties,   .   .   .   are, in contemplation of law, covered by his official salary.   Though he may by some means obtain possession of public funds as additional compensation and by permission of the governing body of the corporation, the title of the money thus obtained does not thereby change, but a liability of the possessor is thereby created to return such money to its rightful owner, which the courts will enforce at the suit of a taxpayer." That states the law plainly as it has been many times announced and applied by this court.   *Frederick v. Douglas Co.* 96 Wis. 411; *Land, L. & L. Co. v. McIntyre,* 100 Wis. 245; *Rooney v. Milwaukee Co.* 40 Wis. 23; *Jones v. Grant Co.* 14 Wis. 518; *Crocker v. Brown Co.* 35 Wis. 284.   No member of this court intends to invade in the slightest degree the wholesome principle mentioned, but rather to increase, if possible, its significance; yet, in the judgment of the writer of this opinion, by the decision in this case it is violated in letter and spirit, and so decidedly that how different minds can come to such diverse conclusions on a plain question of law is of itself food for reflection.   It demonstrates the fallibility of human reasoning, even in matters that are almost, it would be supposed, susceptible of demonstration.   It is unfortunate that such division of judgment exists, but it cannot be avoided without a surrender of convictions, that will not do when important legal principles are involved.

From what has been said it may reasonably be expected that strong reasons are supposed to exist for dissent from the conclusion to which the court has arrived.   We will briefly endeavor to satisfy that expectation.

In the first place it seems proper to review, for a moment, the reasoning of the court.   It is prefaced by a history of

Kollock vs. Dodge and others.

the steps taken in regard to the alleged violation of the charter provisions prohibiting an increase of an officer's compensation during his term of office, and of the importance and extraordinary character of the work the defendant was called upon to do, and the practice of previous administrations to farm out the duties of the office for special compensation in addition to the regular salary incident to it. We shall take no time to demonstrate that all said in that regard constitutes no justification for the acts complained of. The council had the power to give the defendants extra compensation over and above the salary, or did not possess the power. If the latter be true, no matter what the importance of the work which the defendant performed, and no matter what has been the practice of the city council, the situation is yet the same. Transgressions, however numerous or long continued, or to fit emergencies however great, do not count at all to supply a clear want of power in the common council to do the acts complained of. Like reasons have been repeatedly pressed upon the attention of this and other courts to justify wrongs of the kind under consideration. In *Frederick v. Douglas Co., supra*, the facts were that there was an extraordinary volume of legal business for the district attorney to attend to,— an amount utterly impossible for him to attend to without assistance. The salary of the office was fixed without regard to such a situation, yet the court held that such circumstances furnished no excuse whatever for any expenditure in addition to the regular salary incident to the district attorney's office at the time he entered upon the discharge of his duties. The reference by the court here to previous changes in the city surveyor's compensation, in considering the question of the legality of the extra payments complained of, would seem to conflict with what was so decided, if it were not that after such reference, such purpose was expressly repudiated and the various acts referred to held to be of themselves no justification for such

Kollock vs. Dodge and others.

payment. Being repudiated, we take it that, though they are recited together with a suggestion that the officer would not have accepted his position had he not expected and had a right to expect, from the past administration of the city government, that the salary incident to his office was not to be considered as the measure of his compensation, such matters are not intended to be regarded as of any particular significance,— none whatever, other than to exhibit a supposed equity of defendant's position, while, under the principles of law governing the subject, he is not entitled to any such consideration.

The real question is, Does the city charter of the city of *Madison* provide that the compensation incident to the office of city surveyor shall not be changed during the term of office of any person elected to it, and if so, was the law in that regard violated as claimed by the appellant?' The court seems to have come to that conclusion as stated, notwithstanding the many collateral suggestions made, as if entitled to some consideration, in reaching the final result. At the close of the opinion it is said: "We base this decision squarely upon the propositions that the legislature has delegated to the council the power to prescribe the duties of the city surveyor and to fix the fee and compensation for any services performed by him, and that the council has determined that the services in question are not official services." That is to say, as we understand it, that there is no justification for the acts complained of, except upon the theory that defendant's services were unofficial,— work done by him as a mere employee of the city; and that the determination of the council as to the nature of the services is binding on the court. That really fences the matter under consideration within very narrow limits and requires a reference to those portions of the charter of the city bearing on the subject.

Sec. 7, subch. III, of the charter empowers the common

council to appoint such officers as may be necessary to carry out its provisions, and to fix their compensation at the time of the creation of the offices or the commencement of the year, and prohibits any change of such compensation while the officers remain in office.

Secs. 11 and 12 provide for the election of a street commissioner, surveyor, attorney, board of education, and assessor.

Sec. 13 prescribes the duties of the assessor in general language and provides that he shall have such compensation as may be determined by the council, not exceeding $500 for his term of office.

Sec. 14 provides that the street superintendent shall perform the duties prescribed in sec. 7 and for the compensation there named, and such other duties as may be required of him pursuant to the charter or ordinances of the city and not inconsistent with such charter.

Sec. 15 provides that the city surveyor shall be a *practical engineer and surveyor* and that the common council shall prescribe his duties and fix the fee and compensation for any of the services performed by him.

Now while it is true, as stated by the court, that if there is a conflict between a special provision covering a particular subject and a general provision in the same law covering that and other subjects, the latter must give way to the former, such rule of construction does not apply at all till the rule fails to solve the ambiguity which calls for judicial construction, that where two acts or parts of acts are apparently in conflict, they should, if possible, be so construed as to reach such harmony as will give effect to each act or part of an act without doing violence to either. *Attorney General ex rel. Taylor v. Brown,* 1 Wis. 513. In *State ex rel. M., T. & W. R. Co. v. Tomahawk,* 96 Wis. 73, it was said that "in all cases of apparent conflicts between laws or parts of laws on the same subject, we ought to seek such a

construction as will reconcile them together." To the same effect, it was said in *Mason v. Ashland*, 98 Wis. 540, that " when two acts or provisions are susceptible of a construction which will give operation to both and all of the words of each without doing violence to either, it is incumbent on the court to search for some reasonable ground for such construction, and not reach the conclusion that a fatal conflict exists, unless the meaning of the words and the manner of their use be such as to render it impossible to reconcile them on any reasonable theory, whereby all may be given force and effect." It seems to us that such fundamental principle of statutory construction was overlooked in this case, and an apparent conflict was treated at once by that rule of necessity which rejects one part of an act, only, after every reasonable effort to harmonize it with all other parts, upon some reasonable theory, has failed.

It is said that sec. 15 authorizes the common council to say, from time to time, what services the surveyor shall render, and to fix his fees and compensation therefor; that it is in conflict with sec. 7, which provides that such officer's compensation shall be fixed at the commencement of the year, therefore that, the latter being general, the former must prevail. Now obviously, as indicated, such is not the case unless the two provisions of the act cannot be reasonably reconciled with each other.

Sec. 7 is a plain declaration of express power to the common council to fix the compensation of all officers elected or appointed by it,— not some officers, but *all* officers,— and a plain declaration that power shall not exist to change the compensation incident to an office, during the occupancy thereof, of any person elected or appointed thereto. There is no need to stop a moment at this point. So far, the premises upon which our position is based are conceded. Keeping in mind the principle heretofore discussed, that the plain meaning of sec. 7 is not to be departed from for the

purpose of giving effect to the special provision in sec. 15, unless necessary, we proceed.

In close connection with sec. 7, and with plain intent to devise a plain, harmonious system, power is conferred upon the council to elect certain officers, and immediately following that are provisions in regard to the duties and compensation incident to each such office. First is the assessor, whose duties are prescribed by mere reference to the general law, and it is said, his compensation shall be such as the common council shall determine, not exceeding $500. That is a special provision, and without the rule that it must be made to harmonize with sec. 7 if practicable, we might easily say it is in conflict with it, for there is given a broad, general power, within a limitation stated, that has no reference to the general section in its literal sense. The incident of compensation attached to the office is subject to the unrestrained power of the council as to the time when it shall be fixed and as to change, but it is obviously reasonable to say that the specific grant of power must be exercised in harmony with sec. 7, because that does not take from it any essential, and it is in accord with the general scheme of the charter.

The street superintendent is required to perform the duties prescribed in sec. 7, and for the compensation therein prescribed, and such other duties as may be required by the charter or ordinances. Here the literal sense makes the office an exception to sec. 7, because no duties are prescribed, nor any compensation fixed, in such section. Power is merely given by such section to prescribe duties and fix compensations. So we might say that the street superintendent is not required to take a stated compensation for his services, fixed before entering upon the duties of his office, but that, by implication, it is left to the council to contract with him under its general welfare powers. But assuming, as we must, so long as it is reasonable to do so, that the

plain language of sec. 7 means what it clearly indicates,. that the legislative intent was that all other parts of the charter should be in harmony with it in respect to the power of the council to change the compensation of an officer during his term of office, the meaning of sec. 14, regarding the street superintendent, is that he shall perform all duties lawfully required of him for the compensation determined under sec. 7.

Thus far we are in accord with the court. It is assigned as reason for the latter's change at this point that the duties. of the officers mentioned are fixed by special provisions in the charter, while those of the surveyor are entirely left to the council. On the contrary, as we have seen, the duties. of such officers are left to be regulated by ordinance from time to time, where their nature cannot be readily specifically prescribed in the charter or by ordinance in advance. It is said the street superintendent shall perform such duties as are required of him by the charter and also by the ordinances of the city, and express power is given to the council to require duties of any of its officers outside of those prescribed in the charter.

Now, when we come to the city surveyor; it must be noticed that the plain purpose of having a special provision for each of the officers named was to outline the general scope of the duties of each office, not, as the court seems to suppose, to prescribe the special duties of it. Opposite each special provision in the official publication, there is a designation, indicating that the subject of it is the " duties of the office." The provision as to the assessor is, in effect, that he shall perform the duties of an assessor under the general laws of the state; as to the street commissioner, that he shall perform the duties required by the charter and the ordinances of the city. The general scope of the duties of such office are a matter of common knowledge, so nothing on that point is needed. The same would be true of city

surveyor if the purpose of the charter were not to make its duties other than that of running street, alley, and other lines, and to fix points in the field, within the city limits, in which the city might be interested. That is the extent of the vocation of a mere surveyor. But it was intended that the duties of the office should include those having a close relation to duties of a surveyor, so, in the opening lines of sec. 15, it is said: "He shall be a practical surveyor and engineer." The purpose of that was to outline the general scope of the duties of the position, so as to cover practical engineering as well as surveying. That was important, because the settled law is that, under a scheme prohibiting a change in the compensation of an officer during his term of office, the fixed compensation covers every duty within the scope of the position in any reasonable view of it, and every act outside of it as well, required of the officer and voluntarily performed by him. *Quaw v. Paff*, 98 Wis. 586. Only such services as are wholly foreign to the office can be the subject of special contract under such a system. *Love v. Baehr*, 47 Cal. 364; Mechem, Public Officers, § 863; *Adams Co. v. Hunter*, 78 Iowa, 328.

It would be digressing here to take up the subject of the scope of the duties necessarily belonging to and germane to the office of surveyor and engineer, within the proper meaning of those designations. It is only referred to at this point to show that the purpose of the section is in harmony with those which precede it, that is, to indicate the general character of the officer's duties, leaving their particular nature, so far as necessary, to be prescribed as occasion might arise. To that end, though the name of the office was "city surveyor," it was said that the officer shall be a "practical surveyor and engineer," and that the common council shall prescribe his duties, using almost the identical language contained in sec. 7. The first part of such section reads: "The common council shall have power, from time to time,

to require other and further duties to be performed by any officer whose duties are here prescribed." Those are not words of limitation, but were inserted to prevent any construction tying the hands of the council against calling upon an officer to perform some service within the scope of his office because specific duties devolve upon him by the charter. The words follow, "and to appoint such other officers as may be necessary to carry into effect the provisions of this act." That clause points unmistakably to sec. 11, which provides for the street superintendent, city attorney, surveyor, assessor, and board of education. Then come the words, "and to prescribe the duties," in exact harmony with the opening lines of the section, and with sec. 15, relating to the surveyor. Then follow the words, "and fix the compensation of all officers elected or appointed by it." The words of sec. 15 are, "and fix the fee and compensation for any service performed by him." It will be noted that there is a substantial identity between the two expressions. Certainly under the rule that they must be considered in harmony if possible without doing violence to either, there is no difficulty in so considering them.

Now let us place the language of the essential parts of the two sections in parallel lines for greater certainty in making comparison:

"Sec. 7. . . . and appoint such other officers as may be necessary to carry into effect the provisions of this act,

"Sec. 11. On the third Tuesday of April in each year, or within ten days thereafter, the common council may elect . . . a city surveyor."

"And to prescribe their duties,

"Sec. 15. . . . and the common council shall prescribe the duties

"And fix the compensation of all officers elected or appointed by it,

"And fix the fee and compensation for any services performed by him."

"Such compensation . . . shall not be increased or diminished during the term such officers shall remain in office."

Kollock vs. Dodge and others.

Now we apprehend it will not be claimed seriously but that we have shown to a demonstration that the legislative intent was to devise a scheme of government for the city of *Madison* that would not contain any power whatever to change the compensation of a public officer during his term of office; also that we have shown just as clearly that there is no good ground for saying that sec. 15, in all its parts, cannot be read in perfect harmony with sec. 7. If so, our duty at this point is ended. It supports what has been heretofore said, that the principle of construction which rejects a part of a law when in conflict with another part was adopted by the court in reaching its conclusion before the station in judicial investigation was reached rendering that course proper.

Any other result than what is reached in the foregoing leads to this absurd situation: A salary may be provided for the office of city surveyor under sec. 7, which cannot be changed during the term of office of any occupant thereof, but, by the arbitrary will of the council, they can contract with the officer from time to time for everything appertaining to the office, leaving the salary as compensation for wearing the honor of the position, the actual work being paid for by special contract or contracts made from time to time. Such a monstrosity in legislation as that could not be attributed to any body of sane men. Notwithstanding such a situation of the charter seems to be suggested in the judicial reasoning that resulted in the decision from which we dissent, its untenable character seems to have been thoroughly perceived later, and the decision finally made to rest upon the theory that the services in controversy were not official services at all; and to that point we must now address ourselves.

Were the services in question official? That is the remaining question. It must be determined with reference to what was the legislative intent in prescribing the qualifica-

Kollock vs. Dodge and others.

tions of the officer to be that of a "practical surveyor and engineer." Within the scope of such qualifications no discretion was left by the charter for the common council to say what was and what was not official. The one power delegated was to say what the officer shall do within the scope of his official qualifications. Every such service was covered by the compensation fixed before he assumed the duties of the office. The idea that it is left to the caprice of the common council to say from time to time what is required of the officer as official duties, and what he may do under contract, the same as if he were a private individual, without regard to whether he might be required to perform the same services as a part of his official duties, we may safely say has no reason to support it, and that, though there are some things said in the opinion of the court indicating that such an idea was in mind as a ground for the decision at some time during the determination of the case, it was not thought to be sufficient to base such a decision upon, hence was left as a mere suggestion, and the decision made to rest on the sole ground that the services were not official.

A sure test of whether the services of the officer were official or not is, *Could the officer have been compelled to perform them by virtue of his office, or held liable for official misconduct?* Whatever he could have been compelled to do by reason of his official position the council were powerless to bind the city to pay him for as official work. Many illustrations of this are found in the books. A mayor of the city has been held competent to recover for legal services performed for his city under a special contract, because he owed no official duty to the municipality to perform services of that nature. *Niles v. Muzzy*, 33 Mich. 61. In *Love v. Baehr*, 47 Cal. 364, it was held that the official duties of an officer are limited by the nature of his office, and that if services be required of him entirely outside such nature, he is not obliged to perform them for his official salary. The principle

Kollock vs. Dodge and others.

was applied in *Evans v. Trenton*, 24 N. J. Law, 764, it being there held that though extra compensation be promised an officer for services, within the general nature of, or germane to, his office, it cannot be recovered because such a contract is *ultra vires;* that an officer may make a valid contract with his municipality for service entirely outside his official duties, but not for services within the general scope of the office or which are germane thereto. See, also, Mechem, Public Officers, § 863, for further illustrations.

The authorities above cited, and, we may confidently assert, all that can be found on the question applicable to this case, are to the effect that the common council had no power whatever to extend or restrict the nature of the duties which devolved upon the defendant. The idea that it may delegate some of the acts naturally pertaining to the office to the officer to perform officially, and contract with him specially for other acts of the same nature, in its discretion, is, it seems, a wrong construction of the statute; and such, to the mind of the writer, is the effect of the decision in this case, though the idea is not really advanced as a ground for it. How much more reasonable and in harmony with the authorities cited, and with reason, is the construction that the officer is bound to perform, for his fixed salary, all the duties within the nature of his official qualifications which he is directed to do at all!

It is suggested that the fact that the council may, by the terms of the charter, employ some other engineer to do work of engineering, shows that all services germane to the office of surveyor were not intended to be official. Clearly not so. It shows merely that the intent was that if the requirements for services shall be too burdensome, or in the judgment of the council beyond the capacity of the officer at any time, the council may, in the exercise of its discretion, employ some other engineer to assist him. The idea that, because the charter authorizes assistance for the regular officer, it

carries, by implication, power to pay such officer extra for doing services within the scope of his office, is illogical in the extreme. The charter contains a plain grant of power to elect an officer with certain qualifications, indicating the nature of the services he shall render, and power to determine the character and amount of such services, and to employ assistance when necessary, but no power to contract with the officer to perform services which he may be required to do by the council by their commands.

But it is said that some part of the services were charged up to abutting property. Why should that make any difference? The charge against abutting property was surely not for the benefit of the officer, but for the benefit of the city. As well might it be claimed that if I let the services of my servant to another, his earnings shall be by so much an addition to the fixed yearly compensation which I have agreed to pay him. That provision of the charter is simply a means of reimbursing the city for its expenditures in the payment of its officer's compensation, which services are, to that extent, specially beneficial to the abutting property owners. It has no legitimate bearing whatever on the amount of the officer's compensation for official duties.

But it is said that the action of the common council in making services pertaining to the office unofficial was not such an unwarranted abuse of power as to call for the interposition of the court, as if there were some discretion in the common council to say what are and what are not official services, within the limits fixed by their nature, or that where the judgment of the council has been exercised in determining whether services are within or without the nature of the office, reasonable doubts are to be resolved in favor of its action. To that we say: first, there is no question of discretion involved, but a question of power, the limit of the power being the limit of the nature of the office, as said in *Love v. Baehr*, 47 Cal. 364; second, that in determining whether

services are within or without the nature of the office, reasonable doubts should be resolved in favor of the former instead of the latter. So exceedingly important is the policy of the law prohibiting increasing an officer's compensation during his term of office, so frequent are the importunities for such an increase, so ingenious are the methods to obtain it, and so liable are legislative bodies to give way to such importunities, or be imposed upon by such ingenious methods, or to become in some other way a party to a violation of the wholesome law, that it has been uniformly held that a rigorous enforcement of it is demanded of the courts, and to that end that not only all services clearly within the scope of the office, but all incidental or germane thereto, should be held to be covered by the officer's regular compensation if such services be performed by him, *Decatur v. Vermillion*, 77 Ill. 315; *Rowe v. Kern Co.* 72 Cal. 353; Mechem, Public Officers, § 862. The rule in that regard is nowhere better stated than in *Evans v. Trenton*, 24 N. J. Law, 764, in substantially the following language: 'The rule is important to the public. It should be very rigidly enforced. The statutes of the legislature and the ordinances of the municipal corporation seldom prescribe with much detail and particularity the duties annexed to public offices, and it requires but little ingenuity to run nice distinctions between what duties may and what may not be considered strictly official, and if these distinctions are much favored by courts of justice, it may lead to great abuse.' We indorse that. All acts of a public officer for his municipality not clearly unofficial should be deemed to be official. That is demanded in order to minimize, so far as practicable, the mischiefs of the continuous efforts of officers to increase their compensation, which experience shows is a constant source of peril to the safety of public funds. The lesson should be inculcated by the courts at every opportunity, that the sole compensation of a public officer, under such a system as that written into

the charter under consideration, is that incident to the office when he accepts it; and that the sole relief from its burdens, if found too onerous, is resignation. *Evans v. Trenton, supra; Decatur v. Vermillion, supra.* So it will not do, either for the court to say that the common council had a discretion to decide whether the services in question were official or not, or to justify noninterference on the ground that, if there was an abuse of the charter powers, it was not a very clear abuse.

A third and conclusive answer to the suggestion that the court should not intervene in this action to protect the public interests because the abuse of power complained of, if there be such, is not very clear, is that the services in question are covered by the very nature of the office and by the express requirements of the charter as well. Planning, constructing, and superintending the construction of sewers are among the most common duties pertaining to the business of civil engineering, and such the designation of the vocation clearly indicates. That is so much a matter of common knowledge that one feels hardly justified in supporting it by an appeal to reason and authority. The term "engineer" as applied to civil matters refers "to the construction of fixed public works, such as . . . aqueducts, bridges, . . . sewers, etc." Webst. Dict. "To the designing and construction of public works, such as roads, bridges, etc." Stand. Dict. Thus it will be seen that the qualification of the office held by defendant covered the work in question, as the term "engineering" is defined in our standard lexicons. Nothing appearing to the contrary, it must be presumed that the legislature used such term in its plain, ordinary sense.

But the intent of the legislature is not left to be discovered by legal implication. In the amendment to the charter (Laws of 1885, ch. 195) it is said that the common council may require the city engineer to make plans for sewers con-

formably to a general plan for sewerage for the whole city, and that the work of construction under such plans shall be done under the direct supervision of such engineer. Thus it will be observed that though it was competent for the council to obtain the services of some other engineer to assist the regular officer, the latter was bound to act in respect to the services in dispute when commanded to do so by the council. Therefore, all services mentioned in the opinion of the court, where the council has heretofore paid its engineer in excess of his regular compensation, were performed by him because he was city surveyor, and because he could not do otherwise without being guilty of official misconduct. He was in each instance directed to act upon the theory, as the fact is, that it was his duty to obey. In the light of the foregoing, who can answer otherwise than in the affirmative to this question: If the defendant had been directed to do the work in question and refused to obey, would he have been guilty of official misconduct? This is unanswerable logic. It was the duty of the defendant to perform, as official, all services performed by him for the city that were within the scope of or were germane to the nature of his office. Every such service the officer could have been compelled to perform or be guilty of official misconduct, hence the council were powerless to make it the subject of a special contract with him. The services in question pertained to the business of civil engineering, and were within the nature of the duties which could lawfully have been required of defendant, therefore such services were official, and the contract to treat them otherwise and to pay extra for the same was void.

To recapitulate:

1. The practice of the common council in respect to violating its charter by increasing the compensation of its city surveyor during his term of office, does not change the plain letter of the charter prohibiting it; nor do such violations

weigh at all as a justification of the illegal conduct complained of, or in determining whether the charge of illegality in that regard is sustainable.

2. The general grant of power to fix the compensation of the city officers, and prohibition of any change of such compensation during the term of office of any officer, are in perfect harmony with the special grant of power to prescribe the duties of the city surveyor and to fix his compensation.

3. If on any theory the two provisions are in conflict, and we hold there is none, they may reasonably be read in harmony, and that is sufficient for the appellant.

4. A suggestion that the council may treat services pertaining to the nature of the office of city surveyor as official or unofficial in its discretion, leaving part or none of such services to be compensated for by the fixed salary, and part or all of such services to be treated as unofficial and paid for under special contracts, should be rejected under the familiar rule that any construction of a statute which leads to an absurd result should not be adopted.

5. Services of the kind in question are covered by the plain ordinary meaning of the term " practical engineering " and the express requirements of the charter.

6. The fact that the services in question are such that the defendant might have been compelled to perform them as duties incident to his office, demonstrates that the common council was powerless to make them unofficial and the subject of special contract with its officer.

This dissent from the decision and opinion of the court might have been stated with much less labor than has been expended upon it, but the importance of the subject seems to amply justify such labor. It is thought that a backward step has been taken where, if movement were to be made at all, it should be in the direction of strengthening the line against the tendency to obtain extra compensation for public services. The contrary course here is attributed to a

misconception of the meaning of the charter considered, the application to it of wrong rules of statutory construction, and an effort to construe that which is so plain as not to be open to construction. Though the reasons for this dissent have been given with considerable directness of statement, resulting from much study of the subject, I disclaim any higher desire that right principles should prevail than that which I fully concede to those holding opposite views. They have most conscientiously and laboriously worked to that end, but yet reached a conclusion with which individual conceptions of judicial duty do not permit a concurrence. I think the order appealed from should be reversed.

CASSODAY, C. J. I concur in the reasoning and the conclusions contained in the dissenting opinion of my brother MARSHALL.

A motion for a rehearing was denied January 9, 1900.