BURTON *v.* SANDERS.

5-1780                                    321 S. W. 2d 209

Opinion delivered February 16, 1959.

[Rehearing denied March 23, 1959]

*J. Kenton Cochran,* for appellant.

*Williams & Gardner,* for appellee.

PAUL WARD, Associate Justice. This litigation involves the title to 154 acres of land in Pope County. Lillie (Duvall) Burton, and Alpha O. Duvall, are daughter and son, respectively, of J. E. Duvall, deceased. Appellees are R. C. Sanders and Grace V. Sanders, who are now in possession of the land and claim title thereto by entirety by virtue of a deed executed to them by Neil E. Jackson, and also by adverse possession.

Immediately following is a brief summary of the background facts and some of the issues raised in this litigation. On January 7, 1908, Sallie Ashley executed a deed conveying said lands to the said J. E. Duvall and his two children. Because of the peculiar wording of the deed, there may be some doubt as to just what interest appellants received under said deed. There is also a contention that the deed was not recorded exactly as it was written. The said J. E. Duvall died December 16, 1930. There was an administration of the estate through the Probate Court, and on September 30, 1935, an administrator's deed was executed to the Bank of Atkins. This deed conveyed all of the lands in question except a part of the North Half of the Northeast Quarter of Section 2, consisting of 74 acres. It is appellants' contention that said administrator's deed was void. It also appears from the record that the lands involved had been mortgaged, that there was a foreclosure proceedings, and that the Commissioner in Chancery executed a deed to the said

Bank of Atkins on February 23, 1937, conveying all of the lands involved except one 40-acre tract. The record further shows that this 40 acres was included in the administrator's deed to the Bank of Atkins, and that both of said deeds conveyed all of the said land here involved.

On April 8, 1957, appellants filed a complaint against the Clerk of Pope County in which it was stated that they were the joint owners of said lands and that the said deed had been improperly recorded. The prayer was that the recordation of said deed be cancelled. Thereafter, on May 17, 1957, appellants filed an amendment to their complaint, making Mr. and Mrs. Sanders defendants on the ground that they claimed some interest in said land and were in possession thereof. Appellants' complaint was amended again on December 23, 1957, to allege that they were joint owners of said lands and that the original deed executed in 1908 had been erroneously recorded.

After numerous motions were made by appellants and overruled by the trial court there was a final submission of the cause of action on its merits in May 1958. The trial court found, among other things, that Mr. and Mrs. Sanders were the lawful owners of the land for the reason that they had been in adverse possession for more than seven years, and so decreed. For reversal of this decree, appellants have appealed, relying on several grounds.

Waiving for present consideration the objections raised by appellants to the rulings of the trial court on matters of procedure, we hold that the decree of the trial court must be affirmed on the ground of adverse possession.

The Sanders had color of title dating back to 1935. In that year the land was deeded by the administrator to the Bank of Atkins; in 1937 there was a Commissioner's deed to the Bank of Atkins; in 1948 the Bank of Atkins deeded all of said lands and all the interest therein to Justin M. Barker; on February 3, 1951, the

said Justin M. Barker deeded all the lands and all the interest therein to Neil M. Jackson, and; on March 22, 1952, the said Jackson conveyed all of said lands to appellees, Mr. and Mrs. Sanders, and they were in possession under said deed at the time this litigation began. It was stipulated by the parties that all of the taxes were paid on said lands by the Bank of Atkins from 1936 to 1945; that Justin M. Barker paid the taxes on all of said lands from 1945 to 1951; that Neil Jackson paid the taxes until 1954, and that Sanders has paid the taxes from that date until date of trial. It was undisputed that the Sanders and Neil Jackson have lived on this land, occupied and farmed it since 1951. The testimony is undisputed that when Jackson bought the land in 1951 it had been occupied and farmed by Delmer Matchett who had rented the land from Justin M. Barker.

We are not convinced by appellants' contention that the possession of said land by the Sanders and their predecessors in title was not adverse. In appellants' brief they make this statement: "Jackson testified that he did not hold adversely to these appellants." We do find a statement in the record to the above effect, but it appears from other parts of Jackson's testimony that he did not understand the legal implications of adverse possession, and that he never meant to disclaim ownership of the lands he had bought for $3,500. After testifying he "was in possession of the property from the time the deed was signed," Jackson was asked the following question on cross-examination: Q. "Well, we are talking about being in actual possession on the land. Mr. Jackson, did you move into there with any types of acts or any hostile attitudes toward the plaintiffs in this case?" Obviously, his only answer was "No," because he had already testified that he did not even know either of the plaintiffs. In all events, we cannot say the trial court's finding of adverse possession was against the weight of the evidence.

Appellants appear to take the position that this cause should have never been considered on its merits by the trial court, and should, therefore, be reversed by us. We are unable to agree with this position or contention. The several grounds relied on by appellants are, however, discussed briefly below.

(a) When appellants filed their first amendment and made the Sanders parties defendants, Mr. Sanders filed a plea of *res judicata* based on the administrator's deed and the foreclosure proceedings and commissioner's deed referred to heretofore. Also, after appellants' second amendment was filed, Sanders again filed the same plea. Appellants' first objection was and now is that the first plea was not filed within 20 days as provided by statute, but appellants waived this objection by filing their amended complaint later. The second objection was that the court should have required appellees, Sanders, to elect between the plea of *res judicata* and their answer on the merits. The trial court was correct because the two pleadings are not inconsistent.

(b) No personal service was had on Mrs. Sanders when she was first made a party defendant by the first amendment to the complaint. When the second amendment was filed she was served by warning order. It was appellants' contention that Mrs. Sanders did not file her answer within 30 days after the court ordered such method of service. The statute involved is Section 27-1135 Ark. Stats. Supp. The pertinent parts of this section read:

"A defendant to any complaint or cross complaint must appear or plead either generally or specifically the first day after expiration of the periods of time set forth below as the case may be . . .

"Third. In the case of constructive service where publication of the warning order has been made *as required by law,* and thirty (30) days has elapsed since the making of the order *and the appointment of the attorney ad litem.*" (Emphasis ours.)

Ark. Stats. Section 27-355 provides that "Warning Orders shall be published weekly for at least four (4) weeks." Appellants state that the order was made November 26, 1957, and that Mrs. Sanders filed her answer on January 3, 1958, but they do not show that the publication was according to law nor do they show the appointment of an attorney *ad litem* as required by the statute.

It follows, therefore, from what we have said heretofore that the decree of the trial court must be, and it is hereby affirmed.

Affirmed.