UTLEY v. HECKINGER.

5-2809                                                362 S. W. 2d 13

Opinion delivered November 26, 1962.

*J. H. Spears, Jake Brick, J. W. Kirkpatrick,* Memphis, Tenn., for appellant.

*Hale & Fogleman,* for appellee.

SAM ROBINSON, Associate Justice. This action grows out of a traffic mishap which occurred about 2:30 a.m., July 10, 1959, on Highway 55 north of James Mill Overpass in Crittenden County. Three vehicles were involved; a truck equipped as a wrecker, a heavily loaded Diamond T truck, and a 1954 Pontiac. The wrecker was owned by appellant, E. L. Heckinger, and operated by his employee, appellee, Vernon Odell Griggs. The truck was owned by appellant, M. T. Utley, and was being driven by his employee, Jimmy Marshall. The Pontiac was owned and being driven by appellee, Mary White. Burdie Mae Cross, J. D. Cross, and Betty Jean Cross, minors and relatives of Mary White, were also occupants of the Pontiac.

Griggs had driven the wrecker belonging to Heckinger to the above mentioned point on Highway 55 to pull a truck out of a ditch. After performing that task, the wrecker was stopped partly on the paved portion of the highway so that the equipment used in pulling the truck onto the pavement could be loaded onto the wrecker. The truck that had been in the ditch proceeded on its way and was not involved in the collision that followed.

While Griggs, the driver of the wrecker, was loading the chains, pulleys, etc., Mary White, driving her Pontiac with the Cross children as passengers or guests, approached from the north. There was a heavy fog, and a short distance behind the White car, travelling in the same direction, was the Utley truck.

There is evidence to sustain a finding that the Utley truck struck the rear end of the Mary White Pontiac and knocked it into the Heckinger wrecker. All three vehicles were damaged. Mary White received serious injuries, and the Cross children were injured to some extent.

This action was commenced by Heckinger and Griggs filing suit against Utley. Heckinger seeking compensation for damages to his wrecker, and Griggs seeking compensation for alleged personal injuries. Utley filed an answer and cross-complaint denying liability and alleging negligence on the part of Heckinger and Griggs. Also, Utley made Mary White a third-party defendant and

alleged that the accident was due to the negligence of Heckinger, Griggs, and Mary White, and asked that he be awarded judgment against all of them for damages to his truck and cargo.

Mary White answered Utley's complaint and filed a cross-complaint and also made Heckinger and Griggs third-party defendants. The Court gave the parties 90 days additional time in which to plead. Heckinger filed his answer to Utley's cross-complaint one or two days after the allotted time had expired. Later, Utley filed a motion to dismiss the Heckinger answer to the cross-complaint because it was not filed in statutory time. The answer to the cross-complaint was filed on August 16, 1960. The motion to dismiss was not filed by Utley until the 27th day of November, 1961, at which time depositions had been taken and the parties were in court ready for trial. Utley waived the right to have the answer to the cross-complaint dismissed by not making a motion to that effect in apt time. *Burton* v. *Sanders*, 230 Ark. 67, 321 S. W. 2d 209.

Lovie Allen, for herself and as mother and next friend of the Cross minors, filed suits against Utley, Heckinger and Griggs, alleging damages she had sustained by reason of medical expenses for the children and damages suffered by the children by reason of alleged personal injuries. The cases were consolidated for trial.

Griggs filed no answer to Utley's cross-complaint. Utley filed a motion for a default judgment. Ark. Stats. 27-1135 provides: "A defendant to any complaint or cross-complaint must appear or plead either generally or specially the first day after expiration of the period of time set forth below, as the case may be: First: Where the summons has been served twenty (20) days in any county in the state." Ark. Stats. 29-401 provides: "Judgment by default shall be rendered by the Court in any case where an appearance or pleading, either general or special, has not been filed within the time allowed by this Act; provided, that the Court may for good cause allow further time for filing an appearance or pleading, if application

for granting further time is made before expiration of the period within which the appearance or pleading should have been filed; and that nothing in this Act shall impair the discretion of the Court to set aside any default judgment upon showing of excusable neglect, unavoidable casualty or other just cause.'' No attempt was made to show excusable neglect, unavoidable casualty or other just cause for Griggs' failure to answer Utley's cross-complaint. Therefore, under the provisions of Ark. Stats. 29-401, Utley was entitled to a default judgment on his cross-complaint against Griggs, and since Utley's judgment on the cross-complaint should have been rendered prior to the actual trial, Griggs could not recover on his complaint. ''If more than one action between the same parties and with reference to the same subject-matter is pending, the first judgment rendered in either action bars the other action, regardless of priority in time of commencement.'' *Sims* v. *Miller,* 151 Ark. 377, 236 S. W. 828, *Adams and Rusher* v. *Henderson,* 197 Ark. 907, 125 S. W. 2d 472. It follows that the judgment in favor of Griggs in the sum of $225.00 must be reversed and his complaint dismissed. It might be added that Griggs' failure to answer Utley's cross-complaint resulting in a default judgment, is in no way prejudicial to Heckinger or Utley.

We come now to the principal point in controversy between Heckinger, Utley, Mary White, and Lovie Allen in her own right, and as mother and next friend of the Cross minors. In selecting the jury, the Court, over the objection of Utley, directed the Clerk to furnish the parties a list of 21 veniremen from which to select a jury of 12. The Court allowed Heckinger and Griggs to challenge three, allowed White and Allen to challenge three, and allowed Utley to challenge three. Ark. Stats. 39-229 provides: ''Each party shall have three [3] peremptory challenges, which may be made orally—but if either party shall desire a panel, the court shall cause the names of twenty-four [24] competent jurors, written upon separate slips of paper, to be placed in a box to be kept for that purpose, from which the names of eighteen [18] shall be drawn and entered on a list in the order in which they were drawn,

and numbered. Each party shall be furnished with a copy of said list, from which each may strike the names of three [3] jurors and return the list so struck to the judge, who shall strike from the original list the names so stricken from the copies, and the first twelve [12] names remaining on said original list shall constitute the jury.'' Ark. Stats. 39-231 provides: '' . . . Where there are several persons on the same side, the challenge of one [1] shall be the challenge of all under this subdivision.''

The statute does not provide for a total of more than 18 veniremen, drawn from a total of 24, from which to select a jury of 12. In *Fidelity-Phenix Fire Ins. Co.* v. *Friedman,* 117 Ark. 71, 174 S. W. 215, the Court said: ''It is evident that if the contention now made by the defendants should be sustained by the court that one of the principal objects of the statute would be defeated. If the defendants were each entitled to three peremptory challenges then it follows as a matter of course that the plaintiffs would be entitled to three peremptory challenges against each of the defendants. The result would be an unnecessary consumption of time in the formation of the jury. New panels would have to be summoned because it is obvious that the regular panels would be exhausted before the jury could be obtained if the plaintiffs and defendants were allowed three peremptory challenges each, as contended for by counsel for the defendants.'' In *Flowers* v. *Flowers,* 74 Ark. 212, 85 S. W. 242, this Court affirmed a judgment in a will case where there were three parties antagonistic to each other and each of the three was allowed three challenges, but that case was decided in 1905, and since that time has not been mentioned on the point involved here. On the other hand, this Court has held, in effect, that under our statutes, the parties must be arranged in two groups and each group given three challenges. *Waters-Pierce Oil Co.* v. *Burrows,* 77 Ark. 74, 96 S. W. 336, *Ft. Smith Light & Traction Co.* v. *Bailey,* 153 Ark. 574, 241 S. W. 42.

To affirm the case at bar we would have to overrule *Hogan* v. *Hill,* 229 Ark. 758, 318 S. W. 2d 580. There, we recognized that where there are several parties there

might be difficulties in selecting a jury under our present statute, but we made it clear that if there was to be a change it must be by an act of the Legislature. In the Hogan case, Hill sued Hogan in tort. Hogan brought Moffatt and Melton into the case as third-party defendants. Melton and Moffatt contended that they were entitled to three challenges separate and apart from Hogan. We said: ''Melton and Moffatt, the third party defendants, in seeking a reversal present an able argument on a very interesting question. They point out, and we must agree, that their interest was in conflict with the interest of the Hogan Co. On this basis they contended they were entitled to three peremptory challenges in the selection of the jury in addition to the three such challenges the court allowed the Hogan Co. We can readily understand the justice and fairness of this view, but we think it is one that addresses itself to the Legislature and not this court. Ark. Stats. § 39-229 which deals with peremptory challenges says 'Each party shall have three (3) peremptory challenges.' Section 39-231, in part, provides: 'Where there are several persons on the same side, the challenge of one shall be the challenge of all under this subdivision.' As was stated in the case of *Crandall* v. *Puget Sound Traction, Light & Power Co.*, 77 Wash. 37, 137 P. 319, in dealing with this same question, 'the right of peremptory challenge is wholly a creature of statute, and not of common law.' Looking solely to our statutes, referred to above, the answer still is not clear. The first section refers to each *party* without defining party. Likewise, there is an element of uncertainty in the use of the words 'on the same side' as used in the latter section. We have concluded, however, that the decisions of this court and other courts have resolved this uncertainty against the contention of Melton and Moffatt here.''

In the case at bar, the parties were found to have suffered damages in the following amounts:

| | |
|---|---|
| Heckinger | $ 2,500.00 |
| Griggs | 225.00 |
| Utley | 3,000.00 |
| White (Prop. Damage) | 950.00 |

White (Per. Injury) .................................... 47,500.00
Cross, J. D. ................................................ 750.00
Cross, Betty Jean...................................... 200.00
Cross, Burdie Mae..................................... 100.00
Allen ......................................................... 586.55

Damage was attributed to the negligence of Utley to the extent of 83%, and 17% to the negligence of Heckinger and Griggs. Judgments were rendered accordingly; such judgments must be reversed by reason of the error in allowing nine challenges.

Under the statutes, the Court must have some discretion in the grouping of the parties for the purpose of exercising challenges, and we believe that when all the pleadings in the case and the situation of the parties are considered, the fairest grouping in the circumstances would be to allow Utley alone three challenges, and allow Heckinger, Mary White, and Lovie Allen, in her own right and as mother of the Cross children, together, three challenges, as there appears to be an entente cordiale between those parties.

Fourteen points are argued on appeal. It is not necessary to mention most of them, as they are not likely to arise in another trial. But we do believe that we should mention that the evidence is not sufficient to prove the damages to Mary White's automobile. There was no direct evidence on this point at all. One witness testified that he knew the value of automobiles, and that an ordinary 1954 Pontiac was worth $1,000.00 or $1,200.00 in 1959; and another witness testified that the Mary White Pontiac was in good condition prior to the wreck, but we do not think this evidence is substantial as to the value of this particular car.

Utley introduced moving pictures of Mary White walking with the aid of crutches and driving her automobile. These pictures were shown in this court and it appears from the record that the last few feet of the film show Mary White walking faster than she was actually moving. The trial court instructed the jury not to consider

that part of the film. We believe it would be better not to show that part at all.

In his argument to the jury, counsel for Mary White told the jury "I have had experience in a case that had an injury just exactly like this, skull, cranial, facial injury of Mary White. We didn't even put them to a trial and they paid them close to $50,000.00." The argument was improper. Counsel is given considerable latitude in his argument to the jury, but he cannot argue facts that are not in evidence. Here, counsel was not giving his opinion on the weight of the evidence in the case on trial, but was telling the jury the facts about what happened in another case. Evidence of the amount of a settlement in another case would not have been admissible in the case at bar as a yardstick for damages, or any other purpose, and since it was not in evidence it could not be argued. *Missouri Pacific Railroad Co.* v. *Emberton,* 230 Ark. 865, 327 S. W. 2d 726.

Judgment in favor of Griggs is reversed, and his complaint against Utley is dismissed. The other judgments are reversed and the cause remanded for new trial.