ARK. STATE HIGHWAY COMM. *v.* SISSON.

5-3406                                         384 S. W. 2d 264

Opinion delivered November 30, 1964.

Mark E. Woolsey, Lindsey J. Fairley, Don Langston, for appellant.

S. Morton Rutherford, III, Tulsa, Oklahoma, for appellee.

GEORGE ROSE SMITH, J. This is a proceeding brought by the Highway Commission to condemn a fifteen-foot strip along the edge of a lot in Springdale, the site of a filling station. The appellees are the landowner, Willella Sisson, and her lessee, Sunray DX Oil Company. The jury awarded the landowner $15,000 and the lessee $6,750.

On direct appeal the Commission contends that the trial court, in empaneling the jury, erred in allowing the land-owner and the lessee three peremptory challenges each. This contention is well-taken. Our statutes contemplate that each side—the plaintiffs and the defendants —will have a total of three peremptory challenges. Ark. Stat. Ann. §§ 39-229 and -231 (Repl. 1962). It is firmly settled that the number may not be increased even though the parties on one side or the other are actually adversaries. Hogan v. Hill, 229 Ark. 758, 318 S. W. 2d 580; Utley v. Heckinger, 235 Ark. 780, 362 S.W. 2d 13. The rule is plainly applicable here. When a single tract is involved the alignment of the condemnor on one side against those having an interest in the land, such as a landlord and tenant, on the other is so clear-cut that the issues are properly determinable in a single trial, with-

out severance. *Ark. State Highway Comm.* v. *Thomas,* 231Ark. 98, 328 S.W. 2d 67.

On cross appeal Sunray, the lessee, raises a number of questions about the admissibility of evidence and the instructions to the jury. We review those that are likely to arise upon a second trial.

In the operation of the filling station Sunray had installed and was using many removable chattels which it owned, including tanks, signs, awnings, a chair, a desk, a table, cabinets, etc. In an attempt to show the rental value of the service station Sunray sought to prove that all these articles of personal property were worth about $7,000. This evidence was inadmissible. The issue was the rental value of the real property, not the value of the chattels. See *Kansas City So. Ry.* v. *Anderson,* 88 Ark. 129, 113 S.W. 1030, 16 Ann. Cas. 784. The proffered testimony had no bearing upon the question before the jury.

Sunray also tried to prove the construction cost and the value of another service station in the neighborhood. Even though the two structures may have been similar, both the cost and the value of the one were collateral matters as far as the value of the other was concerned. The issues in a condemnation case would be hopelessly obscured if the parties were allowed to dispute about the cost or the value of some other piece of property. Counsel for Sunray cite *St. Louis, I.M. & S. Ry.* v. *Theodore Maxfield Co.,* 94 Ark. 135, 126 S.W. 83, 26 L.R.A. (n.s.) 1111. That opinion is not as clear as it might be, but we feel certain that the court's reference to the "value" of other lands in the neighborhood was intended to mean only the value as established by actual sales of comparable property. Such sales form a permissible basis for an expert witness's opinion of the worth of the property in controversy. It does not follow, however, that, in the absence of a sale, the expert should be allowed to give his opinion about the value of other similar land in the vicinity.

Sunray's three principal arguments concerning the instructions may be considered together. The primary term of Sunray's lease will not expire until September of next year. A clause in the lease provides that Sunray cannot, during the primary term, cancel the lease on the ground that, as a a result of specified governmental action, a service station can no· longer be operated on the property. There is proof that after this condemnation the size of the lot will be so reduced that a service station cannot be operated upon what is left, under the city zoning law.

In view of these facts Sunray contends: First, that the jury should have been peremptorily instructed to return a special verdict for the full amount ($6,075) that Sunray is obligated to pay as rent during the remainder of the primary term; secondly, that the court should have given a requested companion instruction explaining the measure of Sunray's damages in addition to this $6,075; and, thirdly, that the court ought not to have told the jury that it should consider the value of Sunray's leasehold in arriving at the value of the landowner's interest in the property.

We think the court was right upon all three points. To begin with, the peremptory charge for a special verdict of $6,075 was wrong, for even if this charge had been correct in other respects the future payments would have to be reduced to their present value. The companion instruction was dependent upon this peremptory charge and falls along with it.

There is another serious flaw in the three combined arguments. When a condemnation takes the whole of leased property or renders the remainder untenantable it is not fair to the landlord to make an unencumbered cash award to the tenant for the full value of his leasehold estate, for he may squander the money without making the rental payments later falling due. Thus, as Nichols points out, the better procedure is to make some provision for the landlord's protection, else his interest in the leasehold is taken with no assurance that he will

ultimately be compensated for it. Nichols, Eminent Domain (3d ed.), § 5-23 [3].

The court was evidently right in telling the jury that it should consider the value of Sunray's leasehold in determining the value of Mrs. Sisson's interest as the owner of the fee. If the State is to be required to compensate Sunray for the rental payments that it must make after it has been in effect dispossessed by the condemnation, it is evidently necessary that Mrs. Sisson's receipt of these rental payments be taken into account in fixing the amount of her compensation. Otherwise the State would be paying not only the value of the leasehold but also the value of the fee unencumbered by that estate. Upon a retrial the instructions in question must be redrafted to submit these issues properly to the jury.

Objections to other instructions are argued, but since these instructions are not set out in the abstracts or in the briefs we are unable to say whether they were right or wrong.

Reversed and remanded on direct appeal; affirmed on cross appeal.