**STATE of Missouri ex rel. KANSAS CITY POWER & LIGHT COMPANY, Appellant,**

v.

**W. F. PARMA et al., Exceptions of Charles D. Barron et al., and Exceptions of Kansas City Power & Light Company as to Tract No. 4 (the Barron Tract), Respondents.**

**No. 54837.**

Supreme Court of Missouri, Division No. 1.

May 10, 1971.

Lowell L. Smithson, Howard F. Sachs, F. Lee Major, III, Kansas City, James M. Farley, Farley, for appellant Kansas City Power & Light Co.; Spencer, Fane, Britt & Browne, Kansas City, Farley & Mos, Farley, of counsel.

James T. Seigfreid, J. Nelson Happy, Kansas City, John R. Moore, Platte City, for respondents; Dietrich, Davis, Burrell, Dicus & Rowlands, Kansas City, John R. Moore, Platte City, of counsel.

BARDGETT, Judge.

This is a suit in condemnation whereby plaintiff electric utility acquired an easement across a corner of defendants Barrons' land for power transmission lines. Court-appointed commissioners assessed defendants' damages at $6240 and plaintiff and defendants both filed exceptions. Trial in circuit court resulted in a jury verdict awarding defendants $25,000 to which a credit of $6240 was applied, representing plaintiff's earlier payment of the commissioners' award, in entering judgment.

Plaintiff's experts testified to damages ranging from $2700 to $3600. The amount in controversy exceeds the sum of $15,000. This court has jurisdiction. Art. V, § 3, Mo.Const.1945, V.A.M.S.

The Barron land is located in Kansas City, Platte County, Missouri, on the west side of Highway 71 and the south side of Tiffany Springs Road between the main portion of Kansas City and Kansas City International Airport (hereafter referred to as K.C.I.A.) at a point about four miles south of the main entrance to K.C.I.A. The subject easement runs in a northeast-southwest direction diagonally across the northwest corner of defendants' property leaving a triangle of two acres, more or less, as the northwest corner. The remaining 61.11 acres lie to the east and south with the eastern boundary fronting 478 feet on Highway 71.

Defendants contracted to purchase this 64.5 acre tract on November 18, 1965, and took title on January 11, 1966, paying $1800 per acre, or a total of $116,100. One of plaintiff's experts testified this was fair value at that time. A farmhouse and outbuildings were located on the tract but were regarded as having little or no value.

April 26, 1968, was stipulated as the date of taking. Charles Barron, one of the owners, and two real estate appraisers testified for defendants as to the value of the entire 64.5 acre tract before and after the taking. Barron set the before value at $390,000 or $6000 per acre; the after value at $354,000 and the damages to be $36,000. One of defendants' real estate brokers testified the before value to be $484,837 or $7500 per acre; the after value at $445,762 and damages at $39,075. The other expert gave a before value of $387,900 or $6000 per acre; the after value $358,700 and damages at $29,200.

Testifying for plaintiff as to values on April 26, 1968, one real estate expert set a before value of $231,800; an after value of $229,100 and damages at $2700. Another said the before value was $260,200; the after value to be $257,080 and damages at $3120; and a third testified the before value was $277,800; the after value $274,200 and damages of $3600.

The interest acquired by plaintiff in this case was an electric power line transmission easement 100 feet wide and 700 feet long, comprising 1.56 acres, upon which plaintiff could erect, maintain and use not more than one wooden two-pole "H" frame structure and appurtenances or, in the alternative, one steel single-pole transmission structure. Plaintiff had the right to construct underground transmission lines. No distribution lines were allowed.

Aerial photographs and other evidence demonstrate that defendants' property and the surrounding land had been and was being used on the date of taking as farmland. Defendants introduced evidence that the highest and best use of the subject tract was commercial because of the construction and development of K.C.I.A. just four miles north with Highway 71 being upgraded to become Interstate 29 which constituted the main route between Kansas City and K.C.I.A. and would connect Kansas City with Sioux City, Sioux Falls, and Omaha.

■ Plaintiff introduced evidence by its real estate experts that the highest and best use was agricultural, but holding for speculation—meaning that the land could not, at the time of taking, be profitably used for a more intense development, but because of its proximity to the site of K.C.I.A. speculation had considerably enhanced its value. In support of defendants' position that the highest and best use was commercial, defendants sought to introduce a copy of a purported franchise agreement contract with Ramada Inns, Inc., dated March 23, 1966. It was not signed by Ramada and plaintiff's objection thereto was sustained. Defendants then sought and, over plaintiff's objection, obtained the introduction into evidence of defendants' exhibit K, purportedly a letter from one Marion Isabel, president of Ramada Inns, Inc., and

read the following to the jury: "I would like to take this opportunity to personally welcome you to the fast-growing enthusiastic Ramada Inn franchise group." Defendants offered this letter to prove that defendants had a license agreement for a Ramada Inn which, according to defendants, "goes directly to the highest and best use."

Plaintiff objected to exhibit K on the grounds that it was not properly authenticated and constituted hearsay. The court observed that the portion read to the jury was "puffing". Nevertheless the exhibit was admitted.

The only identification or evidence of authenticity of exhibit K came from Charles Barron who, when handed exhibit K and asked if he could identify the document, responded by saying, "This is a letter to Mr. William J. Barron on Ramada Inn, Inc. signed by Marion W. Isabel, the president of Ramada." In State ex rel. United Factories, Inc., v. Hostetter, 344 Mo. 386, 126 S.W.2d 1173, 1177, this court, quoting from 9 ALR 987, stated: "The generally accepted rule is to the effect that the mere fact that a letter (other than a reply letter) purports to have been written and signed by the person in question is insufficient to establish its authenticity and genuineness." Lentz v. New York Life Ins. Co., Mo.App., 100 S.W.2d 588; United Factories v. Brigham, Mo.App., 117 S.W.2d 662, 666–667. There is no evidence that defendants' exhibit K was a reply letter.

Defendants, on this appeal, reply by saying the fact of whether or not respondents had a contract with Ramada Inns. Inc., was purely of collateral importance. The record reflects that defendants' attorney stated to the court that defendants' exhibit K, together with other letters which other letters were later withdrawn, were being offered "as a matter of proof to show there is a license agreement for Ramada Inn to the persons on this property, which goes right directly to the highest and best use."

Highest and best use was not merely a collateral issue in this cause but went directly to the ultimate issue—the value of the property and the amount of defendants' damages—and was vigorously contested.

This exhibit was not offered merely to prove that defendants received the letter or that the utterance was made, but was offered to prove the truth of a fact contained therein, to wit, that defendants had a license franchise agreement with Ramada Inns, Inc. The hearsay rule excludes extrajudicial utterances when offered as assertions to evidence the truth of the matter asserted. Wigmore on Evidence § 1766; Mash v. Missouri Pac. Ry. Co., Mo., 341 S.W.2d 822, 827.

As stated, the amount of damages to be awarded defendants was *the issue* in the case. The resolution by the jury of highest and best use to which the property could reasonably be put at the time of taking bore directly on the determination by the jury of the amount of damages. Exhibit K was powerful evidence bearing directly on the ultimate issue. Plaintiff's objection thereto should have been sustained as the exhibit constituted inadmissible hearsay and operated to the prejudice of plaintiff on the vital issue of damages.

The interest acquired by plaintiff in this case reserved to defendants certain uses. In part the reservation to defendants was as follows: "The owners, tenants, lienholders and easement holders, their heirs or assigns, may cultivate and fully use and enjoy the land within said easement or right-of-way, provided such use shall not in the reasonable judgment of the plaintiff interfere with or endanger the construction, operation or maintenance of transmission lines and provided that no permanent *above-ground (insertion applicable to Tract No. 4)* structures *except roads, drives, curbs, parking area, walks and fences (insertion applicable to Tract No. 4)* shall be erected or maintained on said right of way." (Emphasis theirs.)

In closing argument defendants' attorney told the jury: "Now what does this do? They tried to mislead you on this too. I'm sorry, but I have to say it. Now, the facts are, you can take this with you too. It is the easement. Here is what they're doing to us. They can go over, under, across forever. Forever. *And any use we have on this is subject to their permission. That's what this document says.*" (Emphasis ours.) Plaintiff's attorney objected to this as a misstatement of the law. The court overruled the objection and plaintiff claims error in that the impact of the argument was to increase the damages by erroneously enlarging plaintiff's rights under the easement and thereby decreasing defendants' rights to use the easement. The emphasized portions of the easement provisions set forth supra apply to this tract only and are part of the amendment plaintiff filed to its petition in condemnation. Thus, insofar as this case is concerned, there are uses to which defendants can, as a matter of right, put the land to and those uses are, in part, spelled out in the terms of the easement.

The argument of defendants' counsel was clearly improper. It was not merely stating the evidence and all reasonable inferences most strongly for his clients, as counsel has the right to do. Rouchene v. Gamble Construction Co., 338 Mo. 123, 89 S.W.2d 58, 65. In effect, defendants were permitted to misinterpret the legal effect of the written easement so as to make it appear any use of the easement was subject to the whim of plaintiff. If what defendants' counsel said was correct, and it was not correct, then plaintiff got absolute control of the land encompassed by the easement and defendants had no right, as such, to use it for anything. Consequently, defendants' damages would be correspondingly larger than if defendants had the right to utilize the land for specific purposes, as was set forth in the easement supra.

In this case the ultimate jury issue was the amount of damages suffered by defendants. The argument of defendants wholly misinterpreting the documentary terms of the easement made it appear that defendants had no rights, as such, to use the easement. This was patently incorrect, not supported by the evidence, contrary to the terms of the easement and bore directly on the amount of damages in that it erroneously invited the jury to consider as an element of damages an asserted total lack of rights in defendants to use the easement. We believe, in these circumstances, that the court erred in overruling plaintiff's objection to defendants' argument and that plaintiff was directly prejudiced thereby.

Plaintiff contends that the evidence of the approval by the voters of the airport bond issue and the sale of $104 million worth of bonds, both of which took place after defendants acquired title to the tract and before the date of taking, was not proper as it did not qualify as a comparable sale and because evidence of value of neighboring property, not a sale, is not admissible as evidence of value of the subject tenant. In support of this position, appellant cites State ex rel. Highway Commission v. Klipsch, Mo., 392 S.W.2d 287, 290–291; State ex rel. State Highway Commission v. Vorhof-Duenke Co., Mo., 366 S.W.2d 329, 340[16]; Land Clearance Authority v. Doerenhoefer, Mo., 404 S.W.2d 385, 387; Old Colony R. Co. v. F. P. Robinson Co., 176 Mass. 387, 57 N.E. 670. All of the cases cited do stand for the proposition that opinion evidence of the *value* of other land is not admissible to support testimony as to the *value* of the subject land, as such testimony does not have the independent evidentiary basis of an arms-length *sale* on comparable property in the vicinity. This is the rule in Missouri and we, of course, adhere to it.

In the instant case, however, the evidence of the passage of the airport bond issue and the sale of $104 million worth of bonds was not offered as evidence of the value of the airport property nor in anywise as a comparable sale, nor was the evidence concerning these bonds utilized by any person giv-

ing testimony as to the value of the subject tract as a comparable value or comparable sale in support of such testimony as to the value of the subject tract.

Prior to and at the time of taking, the subject property, as well as land for miles around, was actually being used for agricultural purposes. The significant event that caused land prices in the area to increase was the location of the K.C.I.A.

Value witnesses for appellant and respondents considered the airport's existence to be a significant factor causing increases in land values. Whether or not the K.C.I.A. would become a reality depended upon money being available for its construction and the availability of financing depended upon the passage of the bond issue and the sale of the bonds.

The second paragraph of instruction No. 4 (MAI 15.01, 1st Ed.), provided: "In determining fair market value you should take into consideration all the uses to which the property may best be applied or for which it is best adapted, under existing conditions and under conditions to be reasonably expected in the near future."

The principal condition affecting the use to which the property would be best adapted was the existence of the K.C.I.A. and defendants were entitled to introduce evidence from which the jury could find that this condition existed at the date of taking or would be reasonably expected to exist in the near future. The evidence of passage and sale of airport revenue bonds bore on this issue and its admission was proper.

On retrial the subject of appropriate instructions to the jury will obviously again arise. Plaintiff contends that MAI 9.02 should not have been given in this case because only a limited easement, not the fee, was taken. The identical issue was presented by this plaintiff to the Kansas City Court of Appeals in State ex rel. Kansas City Power & Light Co. v. Campbell, Mo.App., 433 S.W.2d 606 (1968), and, as plaintiff acknowledges, the use of MAI

9.02 was upheld therein. Application to transfer to this court was denied November 9, 1968. The exhaustive opinion by Judge Cross of the Kansas City Court of Appeals correctly stated the law.

Other points raised will not likely recur on retrial. For the errors noted, the judgment of the trial court is reversed and the cause remanded for new trial.

All of the Judges concur.