**STATE of Missouri ex rel. STATE HIGH-
WAY COMMISSION of Missouri,
Relator-Appellant,**

v.

**J. R. BAKER et al., Defendants-Respondents.**

No. 9195.

Missouri Court of Appeals,
Springfield District.

Jan. 28, 1974.

Rehearing Denied Feb. 13, 1974.

**434**

Robert L. Hyder, Chief Counsel, Jefferson City, George Q. Dawes, Asst. Counsel, Sikeston, for relator-appellant.

Roberts & Roberts, Raymond R. Roberts, Farmington, for defendants-respondents.

STONE, Judge.

This is a condemnation proceeding by the Missouri State Highway Commission (the Commission) to take additional land needed to convert the two-lane roadway of U.S. Highways 60 and 67 north of Poplar Bluff in Butler County, Missouri, into a divided four-lane roadway with an outer road on the east side thereof. The tract of exceptors G. W. Finney and Norma Finney, husband and wife (defendants-respondents here), was on the east side of the highway about .8 mile north of the corporate limits of Poplar Bluff, Missouri, as they were established on November 4, 1968, the date of taking. The Commission condemned the entire Finney tract, which contained 3.65 acres and fronted on the old two-lane highway for a distance of 298.5 feet (rounded out to 300 feet in the testimony upon trial of defendants' exceptions), with .57 acre being taken for right-of-way and the remainder for "a maintenance site" on which a shed was to be erected. The commissioners awarded damages of $4,890 to the Finneys; but, upon trial of their exceptions in circuit court, they obtained a jury verdict for $11,875. From the judgment entered thereon, the Commission has perfected this appeal.

The Finney tract is "generally flat" and lies "along the crest of [a] knoll," with the highway frontage "possibly five or six feet above road level with a general slope to the property." At the time of taking, there were no improvements on the tract and it was not cultivated or used. Defendants had done no more than "tried to keep . . . it looking nice; we have it mowed nearly every year." Overhead high voltage transmission lines running in a general northwesterly-southeasterly direction angled across the back half of the tract along a 100-foot right-of-way granted by an easement indenture to Southwestern Power Administration which prohibited the erection of any buildings under the lines. Defendant G. W. Finney agreed with counsel for the Commission that the tract under consideration was "just [a] rural commercial site or residential site," but the testimony of all witnesses focused upon the suitability, desirability and reasonable market value of the Finney tract for commercial usage. And, as is usually the case, the triers of the facts were offered a motley, incongruous assortment of views and values.

Defendant G. W. Finney thought that "a fair and equitable price for this property" would have been $22,500, explaining that "I estimated it at $75 a front foot [for the 300 front feet of highway frontage] or $6,500 an acre—it's roughly the same either way." His sister-in-law, Mrs. Peggy Finney, who (with her husband) owned and resided on an adjoining tract where they "had a ceramic and art studio," preliminarily related her experience as a real estate "saleslady" and then expressed the opinion that the tract under consideration "should be worth $5,000 an acre" and thus "had a value of $18,250." Three other witnesses testified for defendants, namely, (1) V. A. Stewart, formerly in "public relations" work for a Poplar Bluff bank and at the time of trial "semi-retired" but still on the bank board and loan committee, who "valued" defendants' tract "at about $4,000 an acre or if you want to go by frontage of 300 feet, in the neighborhood of $40 to $50 a . . . running foot [$12,000 to $15,000]"—"I figured it at approximately $14,000"; (2) Charles Chaney, a Poplar Bluff real estate broker, who said "I believe that property—property along

the highway there in that immediate area is worth $45 to $50 a front foot" which would "figure out—fourteen [thousand] or fourteen [thousand] five—somewhere along in there"; and (3) Carroll Vaughn, "in the real estate . . . and developing business" in Poplar Bluff, who described defendants' tract as "one of the best laying pieces of property along that highway" and said "that it'd be worth $5,-000 an acre [$18,250]."

Three real estate appraisers testified for the Commission, namely, (1) Max Chandler, a "fee appraiser" residing in Sikeston, who expressed the opinion that the reasonable market value of the Finney tract was $2,700, (2) Farron Stallings, chairman of the board and of the loan committee of the First National Bank of Sikeston and "in charge of" appraisals for that institution, who placed the reasonable market value of the Finney tract at $800 per acre and thus $2,920 for the entire tract, and (3) Dub Crutcher of Essex, Missouri, "in the real estate and fee appraisal business" since 1953, who valued the Finney tract at $1,000 per acre and hence $3,650 in its entirety. In qualification of these three witnesses, counsel for the Commission developed that for at least fifteen years each had made manifold appraisals throughout southeast Missouri for various individuals, institutions and governmental agencies, both state and federal. Defendants' counsel emphasized the fact that, over a period of some five years, each of those three witnesses had made numerous appraisals for the Commission by reason of which he had received fees in a substantial aggregate sum.

The Commission's first appellate complaint is that the trial court erred in permitting Mrs. Peggy Finney, defendant G. W. Finney's sister-in-law, to relate hearsay statements by a Mr. Bollinger, identified only as "the resident engineer of Poplar Bluff with the Highway Department fifty years," concerning the value of defendants' tract. After eliciting from Mrs. Finney an affirmative reply to the inquiry, "did he [Bollinger] contact you relative to the fact that your property and [defendants'] property were going to be taken," defendants' counsel inquired "did he state to you the value of this property at that time" and the Commission's counsel promptly interposed timely and appropriate objection that the question called for hearsay, which was summarily overruled. Mrs. Finney then answered "we were worried, we were scared and he [Bollinger] said 'Peggy, don't worry about it;' he says 'that property there on the highway is worth eighty dollars a foot—running foot [$24,-000].'" An immediate motion to strike that answer was denied.

Frankly conceding that the question invited and invoked hearsay, defendants' counsel assert that the statements thus attributed to Bollinger nevertheless were admissible under an exception to the hearsay rule on the theory that they constituted an admission against interest by an adversary party, namely the Commission. We agree with counsel that an admission against interest by a party to a suit properly may be received in evidence where it is inconsistent with such party's position or claim in litigation, but recognition of that basic principle does not reach or rule the question here presented. For the Commission is a legal entity created by the State [§ 226.020, RSMo 1969, V.A.M.S.] and possessed of the powers of a corporation [State ex rel. State Highway Commission v. Bates, 317 Mo. 696, 700, 701, 296 S.W. 418, 420(3) (banc 1927); Christeson v. State Highway Commission, 40 S.W.2d 615, 616(3) (Mo.1931)]—"an artificial legal entity—a quasi public corporation" [State ex rel. State Highway Commission v. Schade, 265 S.W.2d 383, 384 (Mo.1954); State ex rel. State Highway Commission v. Day, 327 Mo. 122, 125, 35 S.W.2d 37, 38 (5) (banc 1931)], and as such specifically invested with the power, inter alia, to purchase, lease or condemn lands in the name of the State of Missouri. § 227.120, RSMo 1969, V.A.M.S.

Being an artificial legal entity, in dealing with others the Commission necessarily could have acted only by and through duly authorized officers and agents [19 C.J.S. Corporations § 999, p. 463], and the admissibility vel non of Mrs. Finney's testimony concerning Bollinger's alleged statements must be determined under the principle reiterated in our case of State ex rel. Kroger Company v. Craig, 329 S.W. 2d 804, 807(7) (Mo.App.1959), cited and recognized as authoritative in instant defendants' brief: "Only declarations or statements made by an employee or agent 'in the course of, relating to, and connected with the ordinary business of the principal, *within the scope of his authority, and then depending,* are excepted from the hearsay rule and competent as admissions against his principal.' Shelton v. Wolf Cheese Co., 338 Mo. 1129, 1139, 93 S.W.2d 947, 953(5) [1936]; State ex rel. S. S. Kresge Co. v. Shain, 340 Mo. 145, 153, 101 S.W.2d 14, 18 [1936]." (All emphasis herein is ours.) Furthermore, Bollinger's alleged statements being presumptively inadmissible because they were hearsay, the burden of showing their admissibility rested upon defendants who offered them. McKenzie Transport Leasing Co. v. St. Louis Public Service Co., 349 S.W.2d 370, 373(3) (Mo.App.1961); Kagan v. St. Louis Public Service Co., 334 S.W.2d 379, 381 (3) (Mo.App.1960). And, as stated in McCormick on Evidence (2d Ed.1972) § 267, l.c. 642, "the party offering evidence of the alleged agent's admission must first prove the fact and scope of the agency of the declarant for the adverse party." In this connection, see Big Mack Trucking Co., Inc. v. Dickerson, 497 S.W.2d 283, 287 (6) (Tex.1973).

Bollinger did not testify upon trial of the case at bar, and the only witness who identified or mentioned him was Mrs. Finney, who simply said that he was "the resident engineer of Poplar Bluff with the Highway Department." The term *"engineer"* is defined generally as meaning "[o]ne who is versed in or follows as a calling or profession any branch of engineering" [Black's Law Dictionary (4th Ed.), p. 623; 30 C.J.S. Engineer, p. 704; Employers' Liab. Assur. Corp. v. Accident & Cas. Ins. Co. of Winterthur, Switzerland, 134 F.2d 566, 569, 146 A.L.R. 1186 (6th Cir. 1943)], and *"engineering"* is said to be "[t]he art and science by which mechanical properties of matter are made useful to man in structures and machines." Black's Law Dictionary (4th Ed.), p. 623; 30 C.J.S. Engineering, p. 705; Employers' Liab. Assur. Corp., supra. In Chapter 327 dealing with the registration of "Architects and Professional Engineers," the term "Engineering" is defined as meaning "the art and science of engineering as defined, outlined, and treated in engineering textbooks and as included and taught in the engineering curricula of schools and colleges of engineering." § 327.020, para. 1(8).

Although the duties of a "resident engineer" for the Highway Department are not delineated by statute, it may be said to have become a matter of common knowledge that they lie in the area of civil engineering, i. e., the construction of public roads and highways. See Kollock v. Dodge, 105 Wis. 187, 80 N.W. 608, 616 (1899); 30 C.J.S. Engineer, p. 704; 5 Encyclopaedia Britannica, Civil Engineer, p. 734. However, we need not and do not rest our determination of this point upon that alone, for certainly the naked identification of Bollinger as a "resident engineer" for the Highway Department and the unadorned and unelaborated concurrence by witness Finney in the leading inquiry by defendants' counsel "did he contact you relative to the fact that your property and [defendants' adjacent] property were going to be taken" furnished no evidentiary basis for a holding either (a) that Bollinger was qualified to express an opinion as to the reasonable market value of defendants' tract on the date of taking or, more importantly, (b) that any such opinion allegedly volunteered by him would have been within the scope of his authority as a "resident engineer" for the Highway

Department and properly might have been received in evidence as an admission against interest on the part of relator State Highway Commission. In fine, the trial court patently erred in overruling the timely objections of the Commission's counsel to Mrs. Finney's testimony concerning Bollinger's alleged hearsay statement.

Nevertheless, defendants' counsel argue that admission of this hearsay statement "could hardly be considered reversible error or so prejudicial to the relator [Commission] to warrant a new trial on all issues" [V.A.M.R. Rule 84.13(b)], because "defendants' case only consisted of Mr. Bollinger's statement *in part*" and the testimony of defendants' three valuation witnesses "could easily support" that award. We are cognizant that, as defendants' counsel remind us, those witnesses opined that the fair market value of defendants' tract was somewhat higher than the $11,875 jury verdict (the valuations offered by those witnesses ranging from $14,000 to $18,250 and thus from approximately 117.8% to 153.7% of the verdict); but at the same time we recall that the fair market valuations assigned to the same tract by the Commission's witnesses were grossly lower than the $11,875 verdict (those valuations ranging from $2,700 to $3,650 or approximately 22.7% to 30.7% of the verdict). However, we pass these figures and percentages with the observation that determination of the point under consideration should not and does not rest either solely or primarily upon the precise range of values assigned by the respective sets of valuation witnesses or upon a mathematical comparison of those values with the jury verdict.

 Mrs. Finney's testimony injecting into the case and presenting to the jury the hearsay statement attributed to Bollinger, identified by the witness as a long-time engineer for the Highway Department who had contacted her relative to "the fact that [her] property and [defendants' adjacent] property were going to be taken," went directly to the amount of defendants' damages which, in this as in most eminent domain cases, is the principal and paramount issue. Missouri State Park Board v. McDaniel, 473 S.W.2d 774, 777 (Mo.App.1971); State ex rel. State Highway Commission v. Davis, 466 S.W. 2d 172, 173 (Mo.App.1971). See State ex rel. State Highway Commission v. Kalivas, 484 S.W.2d 292, 293 (Mo.1972). Our appellate courts have declared repeatedly that incompetent evidence on a material issue is presumed to be prejudicial [Hamilton v. Missouri Petroleum Products Co., 438 S.W.2d 197, 201(8) (Mo.1969); Schears v. Missouri Pacific R. R. Co., 355 S.W.2d 314, 318(2) (Mo. banc 1962); Holmes v. Terminal R. R. Ass'n. of St. Louis, 363 Mo. 1178, 1190, 257 S.W.2d 922, 927(7) (Mo.1953)] unless clearly shown to be otherwise [Hamilton, supra; Schears, supra; State ex rel. Berberich v. Haid, 333 Mo. 1224, 1229, 64 S.W.2d 667, 669(4) (1933); Zarisky v. Kansas City Public Service Co., 239 Mo.App. 396, 400, 186 S. W.2d 854, 856(1) (1945)]; that the burden of so showing such incompetent evidence was not prejudicial rests on respondent [Hamilton, supra, 438 S.W.2d at 201(9); Schears, supra]; and that the admission of such incompetent evidence over objection frequently is prejudicially erroneous and constitutes reversible error even though it may be cumulative in that competent evidence to the same effect has been introduced. Hamilton, supra, 438 S.W.2d at 201(10) and cases there collected. In the case before us, we are of the considered opinion (a) that defendants-respondents have not carried their burden of proof to overcome the presumption that the calculated introduction of the hearsay statement attributed to Bollinger was prejudicial and (b) that said statement was in fact prejudicial.

Since the foregoing is dispositive of this appeal, we need not discuss and rule the Commission's second point charging error in the admission of certain hearsay evidence, over objection, as to the $10,000 valuation allegedly assigned to a relatively small portion, to wit, 1.87 acres fronting on Highway 67, of the 18.87 acres referred to

**438**

as the Brent property (and a "comparable sale") which was conveyed to the Barks by warranty deed dated March 11, 1966, with affixed revenue stamps showing the sale price of the entire 18.87 acres to have been $21,000. The propriety of the trial court's (apparently hesitant) ruling admitting this hearsay evidence depended upon whether or not it was within the scope and intendment of a somewhat informal oral stipulation phrased by defendants' counsel and confirmed by the Commission's counsel, "while the sheriff was picking up additional jurors for voir dire examination." This is a dispute and difference of opinion which should, and no doubt will, be resolved before retrial by agreement of counsel or in a pretrial conference.

■ The Commission's third complaint is that the trial court erred in giving instruction 2, which was in the precise language of MAI No. 3.02 as adopted by the Supreme Court on February 10, 1969, effective September 1, 1969 [State ex rel. State Highway Commission v. DeLisle, 462 S.W.2d 641, 642 (Mo.1971)], because "said instruction failed to place any burden whatscever upon defendants to cause the jury to believe the evidence necessary to support the amount of their damage." When this case was tried, MAI No. 3.02 as adopted in 1969 was the burden of proof instruction which, as the "Notes on Use" informed the bench and bar, was required to "be used in all eminent domain cases," and the giving of any other burden of proof instruction would have been erroneous. State ex rel. State Highway Commission v. Nickerson & Nickerson, Inc., 494 S.W.2d 344, 349(5) (Mo.1973). However, in State ex rel. State Highway Commission v. Sams, 484 S.W.2d 276, 278 (Mo.1972), the Supreme Court conceded the "possible merit" of the same criticism as that voiced by the Commission in the case before us and recognized the need for "a reevaluation of MAI 3.02 by this Court and its Committee." Such reevaluation has resulted in a modified MAI No. 3.02 which, as adopted December 19, 1972, effective July 1, 1973, must be used

upon retrial of this case. See Missouri Approved Jury Instructions (2nd Ed.), 1973 pocket part, p. 10.

For the prejudicially erroneous reception of incompetent hearsay evidence as hereinbefore discussed in ruling the Commission's first point, the judgment of the circuit court is set aside and the cause is remanded for retrial.

HOGAN, C. J., and TITUS, J., concur.

BILLINGS, J., not participating.