**STATE of Missouri ex rel. STATE HIGHWAY COMMISSION, Plaintiff-Appellant,**

v.

**Bill A. SCOTT et al., Sylvester R. Sutter and Mary Katherine Sutter, Defendants-Respondents.**

**No. 9945.**

Missouri Court of Appeals, Springfield District.

Dec. 2, 1976.

Bruce A. Ring, William T. Powers, Jr., Jefferson City, George M. Johnson, Springfield, for plaintiff-appellant.

Gerald H. Lowther, Theodore L. Johnson III, Lowther, Johnson & Franks, Springfield, for defendants-respondents.

Before STONE, P. J., and HOGAN and FLANIGAN, JJ.

FLANIGAN, Judge.

The State Highway Commission brought this action to condemn 1.65 acres of a tract of land owned by defendants Sylvester R. Sutter and Mary Katherine Sutter. The land is located in Lebanon, Missouri, in the northeast quadrant of the "I–44, Highway 5 Interchange." The area of the entire tract, before the taking, was 2.66 acres. The area remaining after the taking is 1.01 acres. Defendants filed exceptions to the report of the commissioners, who had awarded defendants $46,000. At the trial, the jury awarded defendants $99,375. Judgment was entered for the additional $53,375, plus interest. The Highway Commission appeals.

Appellant's first point is that the trial court erred in permitting defendants' witnesses, over objection, to testify concerning the details of a lease pertaining to a nearby tract of land and to give their opinion as to the value of that tract which they deemed comparable to the condemned land. The point is well taken.

One of defendants' witnesses, Fred Wagner, a real estate appraiser, gave testimony concerning the prices involved in the sales of two nearby tracts which he considered comparable to the condemned land. Those two tracts were the Wrinkle land and the Compton land. Thereafter, over the objection of appellant, Wagner gave his opinion as to the value of the "Standard Oil property" which was a nearby tract leased to an oil company in 1970 for an initial term of 10 years at a monthly rental of $800. The lease had "three additional five-year options," the exercise of each option increasing the monthly rental by $50.

The Standard Oil tract, according to Wagner, had an area of 36,528 square feet. Using a "capitalization" formula of 7 percent, the particulars of which he did not delineate, Wagner gave his opinion that the Standard Oil tract had a value of $3.72 per square foot. Wagner described the Standard Oil tract as "a much smaller, obviously a better located more accessible tract, being directly off of the ramp here and on Highway 5, but we are reducing value in a very small area. It's concentrated so the unit price is obviously much higher at $3.72." He added that the defendants' land, prior to the taking, contained 2.66 acres which, he said, amounted to 115,870 square feet. At the request of defendants' counsel Wagner

multiplied 115,870 square feet by $3.72 and arrived at the figure of $431,036.

Wagner testified that in his opinion the defendants' 2.66 acre tract, immediately before the taking, had a value of $125,000 and the value of defendants' remaining 1.01 acres, immediately after the taking, was $2,500, "so the damages would be $122,500." In arriving at these figures Wagner took into consideration his opinion of the value of the Standard tract, based upon the calculations concerning the lease.

Defendants' witness Maurice Burlison, a real estate appraiser, testified, over objection, that in arriving at his estimate of the damage, he considered the terms of the lease on the Standard Oil tract and "capitalized that at 12 percent" to arrive at his opinion with regard to the value of the Standard Oil tract, which was $80,000. Burlison placed defendants' damages at $157,000 based upon a "before taking" figure of $160,000 and an "after taking" figure of $3,000.

Two other witnesses, testifying for defendants, gave "before taking" figures of $112,500 and $160,000 and "after taking" figures of $2,500 and $3,000 respectively. Three witnesses for the Highway Commission gave testimony in which the "before taking" figures ranged from $49,000 to $54,000 and the "after taking" figures ranged from $3,000 to $4,800.

■ Missouri cases support the principle that the particulars of a lease dealing with comparable land, and an expert's opinion with regard to the value of the comparable land based upon computations involving the rental terms, are not admissible on the issue of damages to the condemned land. *State v. Vorhof-Duenke Co.,* 366 S.W.2d 329, 340[16] (Mo. banc 1963); *Land Clearance Authority v. Doerenhoefer,* 404 S.W.2d 385, 387 (Mo. banc 1966); *State ex rel. Kansas City Power & Light Co. v. Parma,* 467

S.W.2d 43, 47 (Mo.1971). The rule is one of expediency and its application spares the court and jury from a time-consuming inquiry into collateral matters of limited relevance.

In *Vorhof-Duenke, supra,* the court said at p. 340: "There is no merit to the defendants' contention that the court erred in refusing to allow their witnesses to testify as to the market value of comparable real property computed from the witnesses' knowledge of the lease on the property and its terms. The capitalization of rentals may tend to show the value of the particular property under lease, but an expert witness cannot give an opinion of the value of similar land in support of his opinion of the value of the land in question. 5 Nichols on Eminent Domain, 3d Ed., § 18.45[1], p. 182."

In *Doerenhoefer, supra,* the court at p. 387, pointed out that although evidence of rental income derived from the *land condemned* may be admissible as bearing on its market value, evidence of the rental value of comparable property in the neighborhood is generally not admissible to prove the fair rental value of the property condemned.

In *Parma, supra,* the court, at p. 47, said: " . . . [o]pinion evidence of the *value* of other land is not admissible to support testimony as to the *value* of the subject land, as such testimony does not have the independent evidentiary basis of an arms-length *sale* on comparable property in the vicinity. This is the rule in Missouri and we, of course, adhere to it." (Emphasis in original.)

Other jurisdictions have taken a similar view and do not permit the introduction of evidence of the rental value of comparable land, or an opinion as to its market value based on the terms of its leasing arrangement, in determining the extent of damage to the condemned land. *McCandless v. United States,* 74 F.2d 596, 603 (CA 9 1935);[1] *Wenton v. Commonwealth,* 335

1. In reversing *McCandless* on other grounds, the Supreme Court of the United States said: "We find no reason to differ with the holding of the court below as to the inadmissibility of evidence respecting the rent paid for other lands." 298 U.S. 342, 348, 56 S.Ct. 764, 766, 80 L.Ed. 1205, 1209 (1936).

Mass. 78, 138 N.E.2d 609 (1956); *Huse v. Milwaukee County Expressway Commission,* 16 Wis.2d 225, 114 N.W.2d 429 (1962); *Arkansas State Highway Commission v. Sisson,* 238 Ark. 720, 384 S.W.2d 264 (1964).

In *Wenton,* supra, the court said at p. 612: "This evidence of rental value of other land should have been excluded. While rental value of a parcel the market value of which is in issue may be received as some indication of the fair market value of that parcel, *Amory v. Commonwealth,* 321 Mass. 240, 258, 72 N.E.2d 549, 174 A.L.R. 370; *Lembo v. Town of Framingham,* 330 Mass. 461, 463, 115 N.E.2d 370, the rental value of similar premises, as distinguished from actual sales near in time, is not sufficiently relevant to warrant the extension of the field of controversy and fact finding which is entailed in its admission."

In *Huse,* supra, the court held that the trial court properly rejected testimony as to the value of nearby property based upon a long-term lease of it. At p. 431 the court said:

"The authority closest in point on this issue is 5 Nichols, Eminent Domain, p. 219, sec. 19.21(1):

'Generally, evidence of the rental value of similar neighboring property is not considered competent in proving the fair rental value of the property condemned. This rule of exclusion is based on the fact that such evidence would give rise to confusing collateral issues which may prove misleading unless further factual details are adduced relative to the degree of similarity between the properties, a study of the neighborhood, and an analysis of the leases involved.'"

In *Arkansas State Highway Commission,* supra, the court said at p. 266: "The issues in a condemnation case would be hopelessly obscured if the parties were allowed to dispute about the cost or the value of some other piece of property." The court conceded that the value of comparable property, as established by an actual sale, forms a permissible basis for an expert witness's opinion of the worth of the property in controversy but that, in the absence of a sale, the expert should not be allowed to give his opinion about the value of other similar land in the vicinity.

In 23 A.L.R.3d 724 there is an annotation on "Eminent Domain; Admissibility, on Issue of Value of Condemned Real Property, of Rental Value of Other Real Property." There additional authorities, some to varying degrees in conflict with the foregoing holdings, may be found. See also 27 Am. Jur.2d Eminent Domain § 433, p. 342; 29A C.J.S. Eminent Domain § 273(3), p. 1201.[2]

It follows that the trial court erred in admitting the challenged portions of the testimony of Wagner and Burlison.

■ Defendants argue that even if the court erred in the respect described, the error was not a prejudicial one because the verdict is within the range of other evidence, the admissibility of which has not been attacked. Defendants cite language from *Jackson County v. Hesterberg,* 519 S.W.2d 537, 546 (Mo.App.1975) to this effect: "It is clear that Missouri adopts the rule that if a jury verdict in a condemnation case is within the range of the evidence, it will not be disturbed on appeal."

The quoted principle, taken in its proper context, is a valid one. Usually it is in-

---

2. Under the Uniform Eminent Domain Code (1974), Article XI, § 1109, a valuation witness, as a basis for his opinion as to value, "may consider the terms and circumstances of any lease made in good faith that included all or part of the property being valued, or of comparable property . . ." However, § 1113 provides, in pertinent part: "Notwithstanding the provisions of §§ 1103 to 1112, the following factors are not admissible as a basis for an opinion as to the value of property:

. . . (4) an opinion as to the value of property other than the property being valued."

The comment under § 1113 includes this statement: "While paragraph (4) seeks to exclude the expansion of the trial into largely irrelevant and remote issues distant from that of the value of the subject property, it does not preclude admission of comparable sales data, nor prevent a valuation witness from testifying to adjustments made in such data in the course of forming his opinion."

voked to answer contentions that a verdict is inadequate or excessive. But defendants seek to stretch the principal beyond its proper scope. It does not mean that if the amount of the verdict is within the range of evidence, the admissibility of which is conceded, that fact alone constitutes a complete answer to claims of other trial errors, however grievous the latter may be.

Jury awards in condemnation cases, although lying within the range of admissible evidence, may be set aside by reason of an error which inhered in the trial if it is deemed prejudicial to the result. *Kansas City & G. Ry. Co. v. Haake,* 331 Mo. 429, 53 S.W.2d 891 (1932); *St. Louis Housing Authority v. Gordon,* 382 S.W.2d 451 (Mo.App. 1964); *State ex rel. State Highway Commission v. Baker,* 505 S.W.2d 433 (Mo.App. 1974); *State ex rel. Kansas City Power & Light Co. v. Parma,* 467 S.W.2d 43 (Mo. 1971).

In *Haake,* supra, the supreme court held that the trial court erred in allowing the condemnor to show, over the landowners' objection, "the assessed valuation for general taxation" of the condemned land. The condemnor's evidence, other than that involving the assessed valuation, showed damages from $4,000 to $6,000. The landowners' evidence showed the damages from $25,000 to $30,000. The verdict was for $7,500. The damages calculated in light of the assessed valuation was "considerably lower than that of any other witness."

In rejecting the condemnor's contention that the error was harmless, the court, at p. 894[5] said: "For plaintiff to so argue is inconsistent with the persistence shown at the trial court to have such evidence admitted. This evidence went to the jury as being, in effect, the evidence of the assessor on the disputed question of the value of the land. What weight this evidence had with the jury cannot be told . . . The effect was to drag down the total damages awarded. *The fact that the damages awarded were greater than was justified by the assessed valuation does not prove that*

*this evidence had no effect on the jury, as the same might be said as to the evidence of several other witnesses on the value.* We are unable to say that this evidence was not prejudicial." (Emphasis added.)

To similar effect is *Gordon,* supra, holding that the trial court committed prejudicial error in permitting testimony that the land was assessed for tax purposes at $3,200. The verdict was for $10,000. The evidence of the damage ranged from $6,900 to $14,500. The appellate court held that the trial court properly sustained a motion for new trial by reason of the error and rejected plaintiff's contention that the jury "was not misled by the admission of this testimony into evidence" for the reason that the verdict was within the range of estimates not assailed.

In *Baker,* supra, the court held that the trial court erred in permitting the introduction of hearsay evidence. In rejecting the respondent's contention that the error was harmless, the court, at p. 437 pointed out that the inadmissible evidence "went directly to the amount of defendants' damages which, in this as in most eminent domain cases, is the principal and paramount issue . . . Our appellate courts have declared repeatedly that incompetent evidence on a material issue is presumed to be prejudicial . . . unless clearly shown to be otherwise; that the burden of so showing such incompetent evidence was not prejudicial rests on respondent . . . ; and that the admission of such incompetent evidence over objection frequently is prejudicially erroneous and constitutes reversible error even though it may be cumulative in that competent evidence to the same effect has been introduced." [3]

In *Parma,* supra, the verdict was within "the range of the evidence" but the judgment was reversed because the trial court committed error in admitting hearsay evidence concerning what was the highest and best use of the property. This evidence, said the court at p. 46, "went directly to the ultimate issue—the value of the property

---

**3.** The quotation from *Baker* is liberally sprinkled with authorities.

and the amount of defendants' damages—and was vigorously contested."

■ Here the challenged testimony played a major role in the trial. Defendant Sutter, in giving his opinion on the amount of damages ($157,000) relied principally upon the evidence concerning the "Standard Oil property." Defendants' witness Burlison used only the Standard Oil computations in arriving at his damage estimate of $157,000. The lowest damage estimate ($110,000) adduced by defendants came from witness Compton who did not use the Standard Oil evidence at all. One of defendants' attorneys, during his final argument and over the objection of appellant, said: "All right, 115,870 square feet times $3.72 a square foot, which is what the Standard station is, if you wanted to you could find that figure, $431,036." The verdict was in fact considerably closer to the low estimate of the defendants than it was to the high estimate of appellant.

As in *Haake,* supra, the persistence with which the inadmissible testimony was utilized by defendants' counsel in the trial court undermines their appellate contention that the error was harmless.

Other points raised by appellant need not be considered because they involve matters which, if they arise at all on retrial, may not arise in the same manner.

The judgment is reversed and the cause remanded.

All concur.

